## HARWOOD *v*. STATE.

Opinion delivered October 24, 1896.

TRANSCRIPT ON CHANGE OF VENUE—SIGNATURE OF CLERK.—The presumption in favor of the regularity of a transcript on a change of venue which is properly certified over the seal of the court, with the clerk's name affixed, is not overcome by proof that the clerk's signature is not in his handwriting, as he may have adopted another's writing for his signature.

EVIDENCE—FORMER TESTIMONY.—Testimony of a witness in a criminal case that he supposes that one who testified at the preliminary hearing is in another state, that he took the train and went in that direction, is an insufficient foundation for proof of what the latter testified at such hearing.

Appeal from Greene Circuit Court.

FELIX G. TAYLOR, Judge.

*Lamb & Westbrooke*, for appellant.

1. The court erred in allowing Baer to testify to the evidence of Babb, given before the justice of the peace at the preliminary hearing. No proper foundation was laid. 33 Ark. 539, 533.

2. The motion to quash the transcript should have been sustained. Without the signature of the clerk, there can be no certificate, without which there is no transcript. Sand. & H. Dig. sec. 2173; 5 Ark. 474; 8 *id*. 252; 9 *id*. 469; 36 *id*. 237; 48 *id*. 94. It must officially appear that the person whose name is signed was present and directed the action of the writer. 31 N. C. 213. Neither the name of an official, purporting to be signed in his official capacity, nor the name of a private citizen, signed by one whose authority is neither apparent upon the document itself, nor otherwise proved, imports verity. 65 Ill. 223; 56 Me. 390; 24 N. H. 267.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. The state proved that witness, Babb, was in Kentucky, that he had left the state. This falls within the rule of 33 Ark. 539. The admission of evidence of this kind is left to the discretion of the court, and unless abused will not be disturbed. 58 Ark. 353.

2. The court properly overruled the motion to quash the transcript. *The seal was affixed*, and the name of the clerk is attached to the certificate. The natural conclusion is that the clerk was present, and authorized the signature. The duties of a clerk are wholly ministerial. 28 Ark. 428. They may be discharged by parties acting under directions. 9 Iowa, 87; 14 Ill. 254; 43 Mo. 353. Webb acted as a deputy clerk, but had not qualified. If this was so, Webb was authorized to sign the clerk's name, and the signature is legal. 38 Ark. 244. The presumption is that Webb acted within the scope of his authority. 25 Ark. 219. Where one signs the name of another at his request, it is binding. 35 Ark. 198; 13 So. 570; 35 N. E. 925.

BATTLE, J. Phillip Harwood was indicted in the circuit court for the eastern district of Clay county for stealing a hog. On his application the case was transferred to the Greene circuit court. When it was called for trial, he moved to quash the transcript of the records and proceedings in the former court, which was filed therein, on the ground that the certificate thereto was not signed by the circuit clerk of Clay county. To sustain his motion he proved that the signature was not in the handwriting of the clerk of Clay, whose name was signed, but in the handwriting of Webb, who was not his deputy, but an employee in his office. The motion was overruled by the court, and exceptions were saved by the defendant.

The state introduced the following evidence: Joshua Baer testified as follows: "About a week or ten days

after September 9, 1894, this defendant with others was arrested for the larceny of the hog in question. There was a preliminary hearing before Justice Settlemyer, at Piggott, Clay county. The defendant was present at the hearing. Babb testified as a witness before Settlemyer, justice of the peace, against the defendant. Babb is in Kentucky, or I suppose he is. He took the Cotton Belt train at Piggott, and went north toward Cairo." As to the preliminary hearing he was allowed to testify, over the objections of the defendant, as follows: "Babb testified that on Sunday morning, September 9, 1894, before the hog was killed, he and the defendant and two Vincent boys, Cossey, and perhaps others, were there in the bottom near Cossey's, and made an agreement in writing, and signed it, that they would stand by each other in protecting their stock; that they then went to Cossey's, and got his gun; then went down the road together, shot one hog, and dressed it, and a little further down the road, shot another hog and dressed it; that the defendant stood on a log as guard while the others dressed the hog; that they all then brought the meat back to Cossey's, and divided it up, each taking his share away. Babb said further that a few days later Fuqua and Hardin and himself rode up to the place where the hog was killed, and when they reached the place, Babb showed Fuqua and Hardin where the killing occurred."

Cossey testified in behalf of the state as follows: "Myself, the defendant, Brent Vincent, and Hunt signed an agreement Sunday morning, September 9, 1894, whereby we agreed to stand by each other in the protection of our stock. After doing this we all went up to my house, got a gun, and started out in the woods. We first shot a small hog, and dressed it, and then a large hog, the one in question. We took the meat to my house, and divided it, each taking his share away. I am

promised immunity from punishment if I testify in this case. The agreement we signed was merely to look after each other's stock, help pay expenses of litigation, and was not in reference to larceny of hogs, or other misconduct."

Mrs. Cossey, for plaintiff, testified as follows: "I am the wife of Counts Cossey. On September 9, 1894, I was at home all day. That morning, which was Sunday, Counts Cossey, my husband, the defendant, Rip Vincent, and his brother, and Hunt came to the house, and got a gun, and went off into the woods. During the afternoon they came back with two hogs. They divided the meat at my house, each taking his portion, and my husband kept his there. We used the meat about the house. I cooked and ate it. I didn't know the meat was stolen, but I supposed it was. They said it was venison, but I knew it was pork. Mrs. Meyers was at my house when the meat was brought there. I attended the preliminary hearing before Justice Settlemyer. Attorneys Barlow and Mack said they would use me as a witness. My husband was also accused of the theft at that time. I told the attorneys that there had been no pork in my house for several months, and no other meat, except some beef and venison."

The defendant adduced evidence tending to prove that he was not present at the place where the larceny was perpetrated at the time it was committed.

He was convicted. He now insists that the conviction should be set aside, because the court overruled his motion to quash the transcript, and allowed Baer to testify as to what the testimony of Babb was in the preliminary hearing before the justice of the peace.

The transcript was transmitted by the clerk of Clay county to the clerk of Greene circuit court, properly certified, with the seal of the circuit court of Clay

*Presumption as to clerk's signature in transcript.*

county and the name of the clerk affixed to the certificate. There is no controversy as to the ensealing of the certificate or the transmission of the transcript. The presumption is, the transcript was legally transmitted, and the certificate to the same was properly signed and sealed, by the clerk of Clay county, until the contrary appears. To rebut this presumption, the defendant proved that the signature to the certificate was not in the handwriting of the clerk whose name was signed to the same. But this proof was not sufficient to overcome the presumption, because he adopted the signature and made it his own by sealing the certificate and transmitting the transcript. *Greenfield Bank* v. *Crafts*, 4 Allen, 447; *Bartlett* v. *Drake*, 100 Mass. 174; *Willis* v. *Lewis*, 28 Texas, 185. Evidence consistent with a presumption is not sufficient to overcome it. The motion was properly overruled.

Admissibilty of proof of former testimony.    The testimony of Baer as to what Babb testified should not have been admitted. The foundation laid for its admission was wholly insufficient.

Reversed and remanded for a new trial.