MALONEY v. STATE.

Opinion delivered October 4, 1909.

1. FORGERY—SUFFICIENCY OF UTTERING.—To constitute the crime of uttering a forged writing, it is sufficient if an instrument capable of injuring another be offered with the knowledge of the falsity of the writing and with the intent to defraud; it not being necessary that the writing should have been actually received as genuine by the party to whom the same is offered, or that the attempt to defraud should be successful. (Page 488.)

2. SAME—OFFERING AN UNINDORSED CHECK.—Forgery may be committed of an unindorsed check, as the transferee thereof without a written indorsement may become the true owner thereof. (Page 489.)

3. SAME—FORGERY OF A FICTITIOUS NAME.—To constitute a forgery, the name alleged to be forged need not be that of any person in existence. (Page 489.)

4. SAME—FICTITIOUS NAME—INFERENCE.—When the jury in a forgery case find from the evidence that the name signed to the alleged forged instrument was that of a fictitious person, the inference arises that the person who uttered and published such instrument as true either forged the same or knew it to be forged. (Page 489.)

5. SAME—FICTITIOUS DRAWER OF CHECK.—It is competent to show that the person whose name is affixed to a check as drawer is fictitious by evidence of the proper officer of the bank upon which the check is drawn that no person of such name kept an account with such bank. (Page 490.)

6.   SAME—SUFFICIENCY OF EVIDENCE.—Testimony of the cashier of a bank which succeeded to the business of the bank upon which the alleged forged check was drawn that the names of all depositors in the drawee bank having deposits therein were transferred to the first-named bank, and that the drawer's name did not appear thereon, was insufficient to prove that the drawer had not been a customer of the drawee. (Page 490.)

7.   EVIDENCE—SILENCE AS ADMISSION.—To render a damaging statement made by another admissible against the accused, it must appear that the accused heard the remark and that the circumstances in proof naturally called for a reply on his part. (Page 490.)

8.   SAME.—Statements made by a witness in the presence of the accused before the examining court did not call for a denial from him, as he was not required to testify in the case. (Page 491.)

9.   SAME—FORMER TESTIMONY OF ABSENT WITNESS.—Before the former testimony of an absent witness can be introduced against the defendant in a criminal case, it must first be shown that such absent witness is dead, beyond the jurisdiction of the court or upon diligent inquiry cannot be found. (Page 491.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; reversed.

*Hal L. Norwood,* Attorney General and *C. A. Cunningham,* Assistant, for appellee.

1. The indictment is sufficient in form fully to apprise the appellant of the particular crime with which he stood charged and against which he should defend himself. It fully meets the requirements of the statute. Kirby's Digest, § 1712. And a conviction or acquittal under it would prevent the State from putting the defendant in jeopardy a second time for the same offense. 5 Ark. 444; 19 Ark. 613; 73 Ark. 487.

2. If there was any error in admitting the testimony of the witness Ketchum, that was waived. Moreover, it was not prejudicial. 77 Ark. 31; 51 Ark. 184; *Id.* 132; 43 Ark. 219; *Id.* 535.

FRAUENTHAL, J. The defendant, Frank Maloney, was convicted of the crime of uttering a forged writing, and sentenced to the penitentiary for a term of two years; and from the judgment of conviction he prosecutes this appeal. The indictment upon which he was tried, with the caption omitted, was as follows:

"The grand jury of Ouachita County, in the name and by the authority of the State of Arkansas, on oath, accuse the defendant, Frank Maloney, of the crime of uttering a forged writing, committed as follows, towit:

"The said defendant, on the 9th day of April, 1909, in Ouachita County, Arkansas, did unlawfully, wilfully and feloniously utter and publish as true to Spence Wooley a certain forged and counterfeit writing on paper purporting to be a check on the Bank & Trust Company of Walnut Ridge, Arkansas, in words and figures as follows, towit: 'Walnut Ridge, Ark., April 8, 1909, No. 614. Bank & Trust Company: Pay to the order of George Collins $6.17, six seventeen (6.17) dollars, C. B. McDonald.'

"The said forged writing being then and there passed, uttered and published by the said Frank Maloney to the said Spence Wooley, with intent then and there feloniously to obtain possession of money, the property of said Spence Wooley, he, the said Frank Maloney, then and there well knowing the said paper to be forged and counterfeited; against the peace and dignity of the State of Arkansas."

The evidence tended to establish the following facts: On April 9, 1909, the defendant, in company with a person named Harris, entered the restaurant of one Spence Wooley in the city of Camden, Arkansas, and ordered supper. After finishing the meal, he gave to Spence Wooley the written instrument or check set out in the above indictment, and requested him to cash same, and to take therefrom the amount necessary to pay for the supper. Not having sufficient money to cash same, Wooley carried it to Mr. Harper and requested him to cash it, which he declined to do. He then showed the check to a policeman, who suggested that he see if the party had the money at the bank. Wooley then returned to defendant, and told him that he was unable to get the check cashed. The defendant then stated that he only had fifteen cents, and asked his companion, Harris, for some money, who did not have it. About that time the policeman appeared and arrested the defendant. Wooley was not acquainted with defendant, nor with his companion, and had not seen either of them before. The cashier of the First National Bank of Walnut Ridge testified that his said bank became the suc-

cessor of the Bank & Trust Company of Walnut Ridge, Arkansas, in February, 1909, a short time before the alleged commission of this offense, and that the balances of deposits due all parties, as appeared on the books of the Bank & Trust Company, were transferred to the books of the First National Bank; and that his said bank had no deposit in the name of C. B. McDonald, and had no customer by that name. There was no other testimony relative to C. B. McDonald, the alleged drawer of the check, or as to his alleged signature; and no testimony whatever to as to George Collins, the alleged payee in the check.

It would appear from the testimony that there had been an examining trial of the defendant before a justice of the peace, and at that trial the party called Harris had been a witness. At the trial of the defendant in the circuit court the policeman, W. N. Ketchum, testified, over the objection of the defendant duly saved, that he had taken from the possession of Harris on said April 9th a little book, which book had been exhibited to the cashier of said First National Bank, and who stated that it was the kind used by the Bank & Trust Company. Over the objection of the defendant this witness, Ketchum, also testified that at the examining trial of defendant the party Harris testified that defendant signed a check while sitting in a hotel in Camden. There was no testimony as to where the person Harris was at the time of the trial in the circuit court. There was no testimony that any inquiry had been made for him or any effort to obtain his presence at the trial.

The defendant filed a motion in arrest of judgment on the ground that the indictment does not allege facts sufficient to constitute an offense. The crime of uttering a forged writing consists in offering to another a forged instrument with a knowledge of the falsity of the writing and with intent to defraud. Those essential elements of the crime are well charged in the indictment. To constitute the offense, it is not necessary that the writing should have been actually received as genuine by the party to whom the same is offered, or that the attempt to defraud be successful; the uttering is complete if the forged instrument is offered as genuine, or declared or asserted, either directly or indirectly, by words or by actions as good. Wharton's Criminal Law (10th Ed.) § 708; 5 Ency. of Evidence, 865;

*Elsey* v. *State,* 47 Ark. 572; *People* v. *Caton,* 25 Mich. 390; *State* v. *Horner,* 48 Mo. 520; *Smith* v. *State,* 20 Neb. 285; 13 Am. & Eng. Ency. Law (2nd Ed.) 1102; 19 Cyc. 1388; *Holloway* v. *State,* 90 Ark. 123.

The instrument set out in the indictment was capable of working a legal injury. Although not indorsed by the alleged payee in the instrument, it had legal efficacy. The gravamen of the offense is the guilty intent which accompanies the attempt to defraud. As said by Mr. Bishop: "Since the offense of uttering is an attempt, it is complete when the forged instrument is offered; an acceptance of it is unnecessary, while yet it does not take away or diminish the crime." 2 Bish. New Crim. Law, § 605. If one, with intent to defraud, offers a forged instrument to another which is capable of injury, he has committed this offense, although the person to whom it is offered might not accept it without a written assignment. But in the instrument set out in the indictment one might obtain a right or an equitable title without a written assignment. *Smith* v. *State,* 20 Neb. 284; *Lawless* v. *State,* 114 Wis. 189; *Brazil* v. *State,* 117 Ga. 32. And the check could be transferred without a written assignment thereof so as to make the transferee the true owner thereof. *Heartman* v. *Franks,* 36 Ark. 501; *Lanigan* v. *North,* 69 Ark. 62.

It is urged by the defendant that there is not sufficient evidence to sustain the verdict, for the reason that it is not proved that the name of C. B. McDonald, affixed to the check as the alleged drawer, was a forgery. In a prosecution for uttering a forged writing, before there can be a conviction, the State must prove that the instrument offered was forged, and that the defendant knew it was forged. It is true that no witness testified that this was not the signature of C. B. McDonald; but if C. B. McDonald was a fictitious person, and such name was signed to the instrument, then it would be a forged writing. "To constitute forgery the name alleged to be forged need not be that of any person in existence. It may be wholly fictitious." 13 Am. & Eng. Ency. Law (2nd Ed.) 1088. It is for the jury to determine under the evidence whether the person whose name appears signed to the instrument is a real or fictitious person. If they should find upon evidence that the name was of a fictitious

person, then the inference arises that the person who utters and publishes such instrument as true either forged the same or knew it to be forged. *Williams* v. *State,* 126 Ala. 50; *Brewer* v. *State,* 32 Tex. Crim. Rep. 74; *Davis* v. *State,* 34 Tex. Crim. Rep. 117; *State* v. *Vineyard,* 16 Mont. 138.

And it is competent to show that the person whose name is affixed to a check as drawer is fictitious by the evidence of the proper officer of a bank upon which such check is drawn that no person bearing such name kept or had an account with such bank or was a customer of such bank. 2 Greenleaf on Evidence, § 109; *Barnwell* v. *State,* 1 Tex. Cr. Appeals, 745; *Williams* v. *State,* 126 Ala. 50.

But in the case at bar the official of the bank did not testify that the name of C. B. McDonald did not appear on the books of the Bank & Trust Company, the bank upon which the check was drawn, or that that bank never had such a customer. The witness, C. W. White, testified that he was cashier of the First National Bank, which had succeeded the Bank & Trust Company; and while he also testified that the names of all depositors of the Bank & Trust Company with balances were transferred to the books of the First National Bank, and that the name of C. B. McDonald did not appear on these latter books, still this would not necessarily prove that such a person had not been a depositor of the Bank & Trust Company, for there may have been such a customer of that company, who, though not having a balance to his credit, may have issued this check, either in ignorance of the exact condition of his account or by way of overdraft. Nor was there any testimony introduced that diligent inquiry or search had been made for such person in that community and within the territory in which the Bank & Trust Company had business relations, and that such person was not known, in order to show that the name was of a fictitious person.

It therefore follows that the above testimony of the cashier was not sufficient to show that the name affixed to this check was fictitious, and thereby to raise the inference that it was forged and so known by the defendant who uttered it.

At the trial of the cause the court permitted the witness W. N. Ketchum to testify that at the examining trial of the defendant a party by the name of Harris was a witness, and

that said Harris testified in the presence of defendant that the defendant signed a check in the hotel in the city of Camden; and also to other statements of Harris made at the examining trial tending to incriminate the defendant. Now, this testimony was admissible only on one of two grounds:

(1) On the ground that this was a damaging statement made in the presence of the defendant, and because he did not then and there deny the same, his silence can be used as evidence against him. But, as is said in the case of *Bloomer* v. *State,* 75 Ark. 297, "to render such evidence competent, it must be shown that the accused heard the remark, and that the circumstances in proof naturally called for a reply on his part." The statements made by Harris were in the course of giving testimony in court. The circumstances did not call upon the defendant to deny them and there in the presence of the court make a reply; and under the statute of our State he was not even required to afterwards take the stand as a witness and deny the statements. This testimony was not therefore under the circumstances of this case admissible on the ground that the statements were made in the hearing of the defendant without reply or denial from him.

(2) And this testimony was not admissible on the ground that it was proof of the testimony of an absent witness given on a former trial. Before such testimony can be heard, a sufficient foundation must be laid for its admission. It must be first shown that such absent witness is dead, beyond the jurisdiction of the court, or upon diligent inquiry cannot be found. *Pope* v. *State,* 22 Ark. 372; *Shackelford* v. *State,* 33 Ark. 539; *Green* v. *State,* 38 Ark. 305; *Vaughan* v. *State,* 58 Ark. 353; *Harwood* v. *State,* 63 Ark. 130. The record in this case fails wholly to show that the whereabouts of Harris were unknown, or that he was out of the jurisdiction of the court, or that any inquiry whatever had been made for him. It follows, therefore, that this evidence as to the testimony and statements made by the party Harris was inadmissible. That its admission was highly prejudicial follows from the character of this alleged testimony by which the essential element of the charge against the defendant would be established. By this incompetent testimony the State attempted to prove that the defendant himself

wrote the check, and himself forged the name of C. B. McDonald thereto; and which he thereafter uttered. The admission of this evidence was therefore erroneous.

The judgment of the Ouachita Circuit Court herein is reversed, and this cause is remanded for a new trial.

BATTLE, J., absent, and not participating.