PAUL WM. THEODORE MOORE JR. *v.* STATE OF ARKANSAS

5173                                                    407 S. W. 2d 744

Opinion delivered November 7, 1966

*Penix & Penix,* for appellant.

*Bruce Bennett,* Attorney General; *James C. Wood,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Paul William Theodore Moore, Jr., was charged by Information with Forgery and Uttering in Craighead County, Arkansas. After demanding an early trial, and refusing the offer of counsel, stating that he would prefer to represent himself, Moore was tried by the Craighead County Circuit Court sitting as a jury, found guilty as charged in the Information, and sentenced to five years for forgery, and five years for uttering, the sentences to

run consecutively. From the judgment so entered, appellant brings this appeal.[1] For reversal, it is asserted that Moore was not guilty of forgery and uttering, and the proper charge, if any, was False Pretense. It is also alleged that Moore was entitled to trial by a jury, and that he was further entitled to counsel "almost from the moment of his arrest," his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution being violated under the holding in *Escobedo* v. *Illinois,* 378 U. S. 478. We proceed to a discussion of these points in the order listed.

The evidence reflects that Moore went into the Mercantile Bank in Jonesboro, and told Tony Futrell, Assistant Cashier of the bank, that he needed "about $30.00 till tomorrow," at which time he would have the opportunity to transfer money from a bank in Texas. Moore represented that he was working at the airport, installing an electrical transmission system. He further said that he was staying at the Holiday Inn, and would be in Jonesboro about three weeks. After some further conversation, Futrell agreed to cash the check, and Moore then took a blank check that he had in his possession on the Midway National Bank of Grand Prairie, Texas, and wrote the check in the amount of $30.00, listing the account number as No. CA-973, and then signing on the signature line, "Carlton Electric Co., Ltd." Immediately beneath the signature line, he wrote, "Vancouver, B. C., Canada," and still below that, added "Paul W. T. Moore." After checking with the airport, Holiday Inn, and the Midway Bank, Futrell called the police officers, and Moore was arrested.

Roland W. Walden, President of the Midway National Bank of Grand Prairie, Texas, testified that he had thoroughly searched the records of his bank with respect to an account of Carlton Electric Co., Ltd., and that no such account existed, or had ever existed. He further stated that no account had ever existed at the

---

[1] The court appointed counsel to represent Moore in the appeal to this court.

bank under the name of Paul W. T. Moore. Walden testified that the account numbers in his bank had no letters whatsoever, and all account numbers contained more digits than that on the check in question.

Moore subsequently took the stand, and admitted that he was not connected with any Carlton Electric Co., Ltd., and also admitted that that name was entirely fictitious. In addition, he stated that he had no account at the bank.

We disagree with the contention that Moore was improperly charged with forgery and uttering, rather than false pretense, though it appears from the evidence that he could have also been charged with that offense. The basis of appellant's allegation of the erroneous charge is that he signed his own name to the check, but it must be remembered that Moore, in signing this check, represented that *Carlton Electric Co., Ltd., had an account with this bank.* In other words, he did not maintain in signing the check, that he had a personal account in the Midway Bank, but only that he had authority to sign checks on the company—an account which he knew did not exist—and which could not exist, since he had made up the name, and to his knowledge, no such company was in being. We have held on several occasions that forgery can be committed where the name forged is fictitious. See *Maloney* v. *State,* 91 Ark. 485, 121 S. W. 728, *Walker* v. *State,* 171 Ark. 375, 284 S. W. 36, *Tarwater* v. *State,* 209 Ark. 687, 192 S. W. 2d 133, and *Thompson* v. *State,* 293 Ark. 780, 394 S. W. 2d 491[2]. In fact, the contention here made was also relied upon in *Walker* v. *State, supra.* In discussing this argument, we said:

"It was shown that the name of the drawer of the check, T. E. Smith, was that of a fictitious person, and instructions were asked which, if given, would have told

---

[2]In *Maloney* v. *State, supra,* and *Thompson* v. *State, supra,* we reversed the convictions, holding that the state had not proved the purported drawer to be fictitious.

the jury that, if this were true, appellant would not be guilty of forgery, but would be guilty of the offense of obtaining goods and property under false pretenses, an offense not charged in the indictment, and to acquit the defendant on this account. * * *

"The court did not err in refusing to instruct the jury that, if T. E. Smith were found to be a fictitious person, the crime committed was not forgery, but that of obtaining money under false pretenses. In the case of *Maloney* v. *State*, 91 Ark. 485, it was held that to constitute forgery the name alleged to be forged need not be that of any person in existence."

We find no merit in this contention.

With regard to the second contention, we agree that our constitution grants the right to trial by jury. See Article 2, Section 7, Arkansas Constitution. However, that same section also provides that a jury trial may be waived by the parties in all cases in the manner prescribed by law. Here, the record reflects that Moore, on July 19, 1965, at arraignment, told the court that he desired a speedy trial, whereupon appellant was informed that the next term of the Craighead Circuit Court would not convene until November.[3] Moore replied that he could not make bail, and he requested that he be tried by the judge of the court, sitting as a jury. Other court matters intervened to prevent the court's return until September 2, at which time the trial was held. Ark. Stat. Ann. § 43-2108 (Repl. 1964) reads as follows:

"In all criminal cases, except where a sentence of death may be imposed, trial by a jury may be waived by the defendant, provided the prosecuting attorney gives his assent to such waiver. Such waiver and the assent thereto shall be made in open court and entered of record. In the event of such waiver, the trial judge shall pass both upon the law and the facts."

[3] The record is not clear at this point, but the court evidently informed Moore that a jury would not be impaneled before that time.

This statute was followed, and there was no error. The right to a speedy trial does not mean that all other business of the court must be "shoved to the back" in order to give an immediate trial. Such action, of course, would be impossible, since there are other criminal cases that must be disposed of, those defendants holding exactly the same right as the defendant who desires early disposal of his particular case. Obviously, all could not be heard within a short period of time. The case was heard by the court, sitting as a jury, only because of appellant's insistence that this be done.

Finally, it is urged that Moore was entitled to counsel after he was arrested, and that the failure to furnish counsel at that time was a violation of his constitutional rights as set out in *Escobedo* v. *Illinois, supra.* This allegation is based upon the fact that Moore gave a written statement to Officer Bratton of the Jonesboro City Police, in which he admitted that the name, "Carlton Electric Company," was entirely fictitious, and that he knew there was no account in that name, or his name; also, that he had no account under any name in the Midway National Bank. We do not agree that this case comes under the holding in *Escobedo*. Officer Bratton testified that he advised Moore that the latter was entitled to counsel, and the witness further said that the statement was entirely voluntarily made. The statement itself, signed by Moore, sets out that he has been advised of his right to counsel, and also advised that he did not have to make any statement. This is far afield from *Escobedo,* where a handcuffed prisoner was admittedly not advised of his constitutional rights, but rather was urged to make a statement. In addition, the accused repeatedly asked to speak to his lawyer, and the lawyer, who was present in the building, was refused permission to talk with Escobedo. It is apparent that there is not even a shred of similarity between the cases. For that matter, Moore did not, even at his trial, contend that he had been denied legal counsel, or that he had been deprived of any other right. In fact, before the statement was admitted, the court gave Moore the opportunity to show

the circumstances under which the statement was made, but Moore declined.[4]

Moore certainly could not have been prejudiced by the statement given, since he, of his own volition, took the witness stand to testify in his own behalf, and, in open court, admitted that he signed and cashed the check, that the Carlton Electric Company was entirely a fictitious name, and that he himself had no account at the bank.

The record reflects that the court was apparently very careful, at the time of arraignment, to see that Moore understood that the charges against him constituted a felony, and that appellant understood the court could immediately appoint an attorney for him so that he might have the benefit of counsel during all subsequent proceedings. The offer, as previously mentioned, was declined, Moore preferring to represent himself. The record does not reflect the reason for this choice, but Moore cross-examined all state witnesses and presented one witness for the defense, in addition to his own testimony.[5]

---

[4]"The Court: I suggest, at this time, let the defendant look at the statement. He would be entitled, at this time he would be entitled to cross-examine the witness regarding the circumstances under which the statement was made. Take your time, Mr. Moore, read that over before you do that. (Note: Defendant examined statement.)

"The Court: At this time, Mr. Moore, you may ask any questions of this witness, regarding the circumstances under which the document you have before you was taken and prepared and those circumstances prior thereto, may ask him any question. It is necessary for the court to determine, whether or not, the statement was voluntarily made and in subservience to your constitutional rights in the matter. May ask this witness any question, surrounding the circumstances, you desire.

"Mr. Moore: No questions, Your Honor."

[5]Moore admitted, while testifying in his own behalf, that he had been convicted on approximately 22 counts of false pretense, and one parole violation.

Finding no reversible error, the judgment is affirmed.

It is so ordered.