**638**

TORRANCE NATIONAL BANK, a national banking association, Plaintiff,

v.

The ÆTNA CASUALTY & SURETY COMPANY, a corporation, Defendant.

Civ. No. 15726.

United States District Court
S. D. California, Central Division.
March 28, 1957.

McLaughlin & Casey, by James A. McLaughlin, Los Angeles, Cal., and Donald Armstrong, Torrance, Cal., for plaintiff.

Crider, Tilson, & Ruppe, by Donald E. Ruppe, and Garvin F. Shallenberger, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

Torrance National Bank, a corporate citizen of the State of California, instituted this action against The Aetna Casualty & Surety Company, a corporate citizen of the State of Connecticut, in the Superior Court of the State of California. Defendant procured removal to this Court pursuant to Title 28 U.S. C.A. § 1441(a) (Diversity of citizenship).

Plaintiff seeks to recover upon a Bankers' Blanket Bond and a rider thereto [1] the loss it sustained in a transaction bottomed upon a worthless check. The parties do not dispute that the law of

---

1. "Rider

"* * *

"1. The attached bond is hereby extended to cover—"Forgery Insuring Clause

"(D) Any loss (1) through accepting cashing or paying forged or altered checks * * *, or (2) through the establishment of any credit to any customer or the giving of any value on the faith of such checks * * *, or (3) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices, directed to the Insured, authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured * * * but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer * * *, or (5) through the payment by the Insured of promissory notes which are payable at the Insured or which purport to be notes payable at the Insured under instructions from any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements * * *."

California is applicable, and that there is no right of recovery upon the bond unless the check is a "forgery."

Enesco Federal Credit Union, a depositor of plaintiff Bank, had since 1949 employed one Joseph Alden as its Treasurer. By both the Act[2] under which Enesco was incorporated and a Resolution of its Board of Directors (a copy of which was furnished to plaintiff), Alden was authorized to sign all the checks of the corporation. In addition to managing the affairs of Enesco, Alden during this period operated a paycheck cashing service upon his employer's premises for his own profit. In order to obtain the necessary funds for this personal business, Alden had a long-standing arrangement with the responsible officers of plaintiff Bank whereby on each Thursday he would leave with the Bank teller an unnumbered check, dated the following day, drawn upon the account of his employer and signed by himself as Enesco's Treasurer. Alden would receive in exchange from the Bank, after the close of banking hours, a briefcase containing a substantial sum of money to be used by him the next day in cashing paychecks. The practice was that the check would be held in the teller's cash drawer without entering it in the Bank's records in order to give Alden time to cash paychecks, deposit them in the Bank in another account, and exchange his check on the other account for the Enesco check held by the Bank. Under this procedure no entry of the transaction would appear upon Enesco's monthly bank statement, which was subject to the scrutiny of both the members of Enesco's Board of Directors and the Federal Bank Examiner.

For this special service to Alden the Bank charged him a small weekly fee.

Although the Bank's officials knew the purpose for which Alden intended to use the money so obtained, they were unaware that Alden had no authority from Enesco's Board of Directors to sign corporate checks for his own check cashing business. At least in part because of the irregular routing of these Thursday checks by the Bank, the Directors of Enesco knew nothing of these weekly transactions between their Treasurer and the Bank.

On Thursday, April 2, 1953, this weekly system suffered a blow. Alden left with the Bank teller a check for $30,000 drawn upon the Enesco account and signed by himself as Treasurer. On that date Enesco's account with the Bank was only slightly in excess of $10,000. On his way from the Bank to the offices of Enesco with the $30,000 received from plaintiff, Alden was robbed of the money.

The Bank thereafter attempted to charge the check against the Enesco account and to collect the $19,516.93 deficiency by suit. In Torrance National Bank v. Enesco Federal Credit Union, 1955, 134 Cal.App.2d 316, 285 P.2d 737, the California District Court of Appeal decided that the check was not authorized either actually or ostensibly by Enesco, and that the Bank must bear the loss.

The Bank now seeks indemnification under that portion of the bond issued to it by defendant which insures against loss sustained upon "forged" instruments.

Plaintiff contends that the unauthorized signing by an agent of his own name as agent constitutes a "forgery". If this contention is valid, plaintiff's suit correctly seeks indemnification for its loss.

In his legal argument, counsel for the Bank has misconstrued the effect of the famous rule of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. That case, in very clear if prolix treatment of the subject, declares that in cases wherein a Federal Court applies state law, it must apply that law as it has been declared by the States whose law is in question. That decision in 1938 has been presaged by a statement of Justice Oliver Wendell

**2.** Title 12 U.S.C.A. § 1751 et seq.

Holmes in a dissenting opinion in 1916 when he wrote, "The common law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified * * *." [3] The sovereign to whose articulate voice this Court must hearken is the State of California. To fail to do so would be to totally disregard Erie Railroad Co. v. Tompkins, for we are not to speculate what California should do were it to look to natural justice, or the "brooding omnipresence in the sky", but instead, this Court must look to see what the sovereign State of California has articulated either by statutory enactment or judicial decision.

As early as 1896, in People v. Bendit, 1896, 111 Cal. 274, 43 P. 901, 31 L.R.A. 831, the Supreme Court of California unequivocally articulated the law to be that an instrument signed by the one purporting to have executed it is not a "forgery". Plaintiff asserts that this Court should not follow the Bendit decision. He has cited a group of adjudicated cases [4] which he contends will by analogy lead this Court to declare that under the modern rule, Bendit would be decided differently. [5] Counsel's argument that other cases foretell a different result when California again adjudicates the problem directly falls when a survey of recent cases discloses that in 1955, after considering the very authorities here cited by plaintiff, a California Appellate Court followed Bendit in holding that a genuinely made instrument is not a forgery. [6] Hearing was denied by the Supreme Court of the State.

In the Bendit case, the California Supreme Court declared a rule which forecloses plaintiff from recovery. A District Court of Appeal in California has recently reaffirmed the doctrine of that case, and the California Supreme Court refused to review that decision. The voice of the sovereign to which this Court hearkens in a diversity case has been adequately articulate.

Counsel for defendant will submit Findings of Fact, Conclusions of Law and Judgment for defendant.

3. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 531, 61 L.Ed. 1086.

4. People v. Thorn, 1934, 138 Cal.App. 714, 33 P.2d 5 (The California District Court of Appeal has recently distinguished the case from the issue presented here); People v. McKenna, 1938, 11 Cal.2d 327, 79 P.2d 1065; People v. McPherson, 1907, 6 Cal.App. 266, 91 P. 1098 (substantially different in that defendant actually signed the name of another without authority instead of, as in the case now being decided, signed his own name for an unauthorized purpose.)

Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 7 Cir., 1938, 95 F.2d 15. (The decision there supports plaintiff's theory here.) However, in Fitzgibbons Boiler Co. v. Employers' Liability Assur. Corp., 2 Cir., 1939, 105 F.2d 893, Augustus Hand, J., states that the Quick Service Box Co. case represents a minority view.

5. This Court does not overlook that in some situations a federal court, in a diversity suit, may refuse to follow a state supreme court decision. It is not necessary that a case be expressly overruled in order to lose its persuasive force. Cf. Mason v. American Emery Wheel Works, 1 Cir., 1957, 241 F.2d 906. The law is in part an evolutionary process of judicial reasoning. If convinced that the California Supreme Court would no longer follow the Bendit case, then, under the Erie Railroad Co. v. Tompkins decision, this Court should apply the same standards which it believes the highest court of this State would use.

6. Pasadena Investment Co. v. Peerless Casualty Co., 1955, 132 Cal.App.2d 328, 282 P.2d 124. This decision on local law by a highly respected intermediate court of appeal must be accorded great weight. West v. American Telephone & Telegraph Co., 1940, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139.