[Civ. No. 25007.   First Dist., Div. Two.   Mar. 20, 1969.]

MERLE R. JONES, Plaintiff and Appellant, v. FIREMAN'S
FUND INSURANCE COMPANY, Defendant and Respondent.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and John W. McDonald for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Harlan M. Richter and Walter R. Allan for Defendant and Respondent.

TAYLOR, J.—This appeal involves the construction of a Bankers Blanket Bond issued by defendant, Fireman's Fund

Insurance Company to plaintiff's[1] assignor, the Community Bank of San Jose. For convenience, the parties will hereafter be referred to as the Bank and the insurer. The Bank appeals from an adverse judgment after a court trial, in an action to recover losses sustained due to a forgery under the bond, contending that, as a matter of law, the loss was covered under Clause E, and that the trial court erred in refusing to admit evidence concerning the meaning of the term "customer" in Clause D.

Although the facts are not in dispute, a chronology of events is necessary for an understanding of the issues presented. The insurer issued to the Bank a Bankers Blanket Bond, Standard Form No. 24. The pertinent provisions of the insuring clauses (D) and (E) here in issue will be set forth presently. Since 1963, the Bank had been extending credit to a Mr. A. McCall Smith, doing business as Elderberry Farm of California, including unpaid advances of $6,000 on March 6, 1964 (evidenced by two notes, one for $1,000 and another for $5,000). On April 20, 1964, and again on May 11, 1964, Elderberry Farm, through its employee, Mr. Briggs, contacted the Bank about further extensions of credit. At this time, Elderberry Farm had not paid the interest on the two notes mentioned above. The Bank had learned that Mrs. Briggs was a member of the Yorba and Ervine families, and on May 20, indicated that it would require the execution of a continuing guarantee by Mr. and Mrs. Briggs as a condition precedent to advancing any additional amounts to Elderberry Farm. Accordingly, Mr. Briggs obtained a continuing guarantee form and took it home for his wife's signature. He then returned the continuing guarantee dated May 21, 1964, apparently signed by him and his wife, to the Bank, along with a financial statement of their financial condition as of that date. At this time, Mrs. Briggs had no accounts or other relations with the Bank.

As indicated above, the Bank had dealings with Mr. Briggs prior to May 21, 1964, in relation to Elderberry Farm, but none with Mrs. Briggs until May 26, 1964. At that time, the Bank extended credit to Mrs. Briggs, who had signed a car purchase order for Lawrence George Metzger, her son by a prior marriage. Like the continuing guarantee form, this document was not signed by Mrs. Briggs at the Bank but was taken home to her by her husband after the application for

---

[1]Plaintiff, Merle R. Jones, is an executive officer of the Bank.

credit had been signed by Mr. Briggs and Mr. Metzger. As the Bank was the legal owner of the automobile, it had numerous contacts with Mrs. Briggs concerning the details of the Metzger collection. Thus, when the loan to Mr. Metzger was paid off, Mrs. Briggs signed and delivered to the Bank the necessary authorization.

On June 9, 1964, the Bank advanced to Elderberry Farm $16,099.20, secured by another note. This was subsequently paid down to about $13,000. Thereafter, Elderberry Farm went into bankruptcy and all of its obligations became uncollectible. When the Bank made demand on Mr. and Mrs. Briggs, it discovered that Mr. Briggs had no assets, was in a mental institution, and that the financial statement submitted with the guarantee was false. Mrs. Briggs, who had some assets, maintained that her signature to the continuing guarantee had been forged without her knowledge or consent.

Thereafter, the Bank filed an action (No. 172010) against Mr. and Mrs. Briggs on the continuing guarantee and this action (No. 180499) against the insurer on the bond for breach of contract. The two matters were consolidated for trial.

The Bank's complaint alleged that the loss caused by the forgery of Mrs. Briggs was covered under Clause D of the bond. The pretrial conference order and the insurer's pretrial statement indicated that the issues were (1) whether Mrs. Briggs' signature was a forgery; (2) whether the Bank extended credit in reliance on the execution of the continuing guarantee by Mrs. Briggs; (3) whether the Bank suffered a loss because Mrs. Briggs' signature was a forgery and the extent of the loss; and (4) whether any such loss was covered by the bond.

However, the trial proceeded on the narrower issue as outlined by the addendum to the pretrial conference order based on the insurer's pretrial statement, namely, whether or not Mrs. Briggs was in fact a "customer" of the Bank under Clause D. When the Bank attempted to introduce evidence concerning the meaning of the word "customer" in Clause D, the trial court first sustained the insurer's objection that the matter called for a legal conclusion and then stated that it was a factual matter, but did not permit the introduction of any evidence.

The trial court found that Mrs. Briggs' purported signature on the continuing guarantee was a forgery and rendered judgment in her favor in action No. 172010. No appeal is

taken from that judgment. In the instant matter, the trial court found that Mrs. Briggs was not a "customer" of the Bank within the meaning of Clause D and entered its judgment in favor of the insurer. The Bank's motion for a new trial was based on the court's rejection of its proffered testimony relating to the usage and meaning of the term "customer" and the coverage of the loss under Clause E of the bond, as a matter of law. The record indicates that the motion for a new trial was denied as the trial court considered Clause E an entirely new matter.

As noted above, this action resulted from the distinct difference between the Bank and the insurer over exactly what coverages under the bond in question apply to the particular loss. The parties, however, apparently agree that the coverages provided by Clauses D and E are mutually exclusive.

The pertinent provisions of the two clauses here in dispute are as follows: "THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:

"         .    .    .    .    .    .    .    .    .    .    .    .

"(D) Any loss . . . (1) through transferring, buying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured . . . which instructions or advices purport to have been signed or endorsed by any customer of the Insured . . . but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer . . ."

"(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity . . . given any value, extended any credit . . . on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety, or guarantor or as to the signature of any person signing in any other capacity . . ."

The Bank first contends that as a matter of law, the loss is covered by Clause E. It concedes the general rule that new issues cannot be raised for the first time on appeal but argues that the instant case falls within the well recognized exception applicable where the facts are not disputed and the

issue merely raises a new question of law, citing *Tyre v. Aetna Life Ins. Co.,* 54 Cal.2d 399 [6 Cal.Rptr. 13, 353 P.2d 725] ; *Panopulos* v. *Maderis,* 47 Cal.2d 337, 341-343 [303 P.2d 738], and similar authorities. We agree.

■ The insurer contends that the issue of whether or not the forgery was a proximate cause of the loss requires additional testimony. However, the uncontroverted evidence indicated that Mrs. Briggs' signature on the continuing guarantee was a forgery, that the Bank had insisted on her signature before finally approving the credit arrangement and sustained a loss by making the advances. In view of this record, we feel that the facts of reliance and proximate cause have been established beyond possible contradiction or dispute. The amount of the loss is also unquestioned.

Thus, there is left only a question of law, relating to Clause E, a much broader and more inclusive provision than Clause D. The clause was apparently designed to relieve the Bank of its most common risk of doing business—loan defaults when the loans were made in reliance on documents executed by someone other than the purported signator.[2]

The insurer argues that since Clause E is captioned "Securities," it must be interpreted in relation to the caption (*Coit* v. *Jefferson Standard Life Ins. Co.,* 28 Cal.2d 1, 11 [168 P.2d 163, 168 A.L.R. 673]) and in accordance with the restricted reading of the term "instruments" made in *Rockland-Atlas Nat. Bank* v. *Massachusetts Bond & Ins. Co.,* 338 Mass. 730 [157 N.E.2d 239]. In that case, the Supreme Judicial Court of Massachusetts held that the identical language of Clause E of a Bankers Blanket Bond, Standard Form 24, did not include the false certified balance sheet of the borrower, as the terms "documents" or "instruments in writing" were limited to choses in action or other writings purporting to pass title. ■ However, in this state, it is well settled that doubts as to the meaning of insurance policies must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be stated clearly so as to apprise the insured of its effect (*Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 269 [54 Cal.Rptr. 105, 419 P.2d 168]).

Accordingly, we find more persuasive the approach to the interpretation of Clause E of Standard Form 24 made by the Third Circuit Court of Appeals in *Fidelity Trust Co.* v. *American Surety Co. of New York* (1959) 268 F.2d 805. In

---

[2] See 33 Ins. Counsel J. 87.

rejecting an argument similar to that made by the insurer here, the court said at page 807 : ''We do not think this is the best construction of the instrument. The form was offered as a contract by large professional surety companies who certainly know what they are doing. We cannot think that it has not been very carefully drafted or that the draftsman put in words to mean nothing. Furthermore, this language is that of the promisor who is doing professional business for a consideration. The bond contained in the record is a printed form submitted by the surety company. If there is doubt about the meaning of language under those circumstances, it is not to be resolved in favor of the one who chose the words and as a business transaction issued the bond to another. Its very term 'Blanket Bond' indicates that its coverage is to be wide and it is not unfair to interpret the document in this fashion.'' The court then concluded that the clause applied to the ''counterfeit'' duplicate invoices there in issue.

The same broad approach to the construction of a Bankers Blanket Bond was adopted by the Ninth Circuit Court of Appeals in *United Pacific Ins. Co.* v. *Idaho First Nat. Bank* (1967) 378 F.2d 62. A similar view of Clause E of Standard Form 24 was taken by the Sixth Circuit Court of Appeals in *Liberty Nat. B. & T. Co. of Louisville* v. *National Surety Corp.* (1964) 330 F.2d 697. In that case, the court held that the clause applied to the extension of credit on the basis of any written document, and concluded that the forged chattel mortgages in issue were covered by Clause E rather than by Clause D.

■ Accordingly, we hold that the term ''written instrument'' here is not limited to choses in action or documents transferring title, but must be broadly interpreted and construed against the insurer to include the instrument here purportedly signed by Mrs. Briggs as a ''guarantor.'' It follows that coverage for the loss is provided by the express terms of Clause E and the judgment must be reversed.

■ In view of the above, we only comment briefly on the Bank's remaining contention on appeal relating to the rejection of its proffered evidence on the meaning of the term ''customer'' in Clause D. Under the uncontroverted evidence in this case, Mrs. Briggs was not a customer at the time of the Bank's decision to extend further credit to Elderberry Farm on May 20 or upon receipt of the executed forged document on May 21. However, by June 9, when the last advance to

Elderberry Farm was made, Mrs. Briggs had become a bona fide "customer" of the Bank by her admitted involvement in the financing of the automobile for her son.

Therefore, the meaning of the term "any customer" was totally ambiguous. As indicated above, ambiguities must be construed against the insurer. Here, the trial court's interpretation of the term "customer" as limited to a customer at the time the decision to extend credit was made (although reasonable), was one that favored the insurer and draftsman. Furthermore, as there is no accepted meaning of the term or construction thereof by any court, extrinsic evidence should have been admitted. Whatever the true lexicographical interpretation may be, the reasonable expectation of the ordinary banker would be the applicable test (cf. *Prudential Capital Corp.* v. *Royal Indemnity Co.* (1964) 21 App.Div.2d 664 [249 N.Y.S.2d 728]). We also note that *First Thrift of Los Angeles* v. *Pacific Indem. Co.*, 95 Cal.App.2d 460, 463 [212 P.2d 560], appears to indicate that for purposes of the bond, the loss did not occur until the Bank, in fact, paid out the money in June.

The judgment is reversed with directions to the trial court to enter judgment in favor of the Bank.

Shoemaker, P. J., and Agee, J., concurred.