[S.F. No. 22853. In Bank. Feb. 25, 1972.]

LINTON HARRIS, Plaintiff and Respondent, v.
GLENS FALLS INSURANCE CO., Defendant and Appellant.

## COUNSEL

Derby, Cook, Quinby & Tweedt and Carter Quinby for Defendant and Appellant.

Hoberg, Finger, Brown & Abramson and Stephen T. Cox for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—The sole issue in this case is whether a yacht insurance policy purchased by plaintiff provided coverage for his vessel while it was at sea, a few miles from San Francisco Bay.

Plaintiff acquired a 28-foot ketch in October 1967 for $5,400 and shortly thereafter the vessel was taken to a repair yard in Sausalito for an extensive overhaul. On November 17, he purchased a policy from defendant which provided hull insurance, protection and indemnity insurance, and medical payments insurance for a period of one year. The following March 5, in order to determine the adequacy of the repairs under conditions prevailing on the ocean, plaintiff sailed his boat on a trial trip from Sausalito to Monterey. During the return voyage, the boat was struck by a wave and sank approximately three miles off Ocean Beach, California.

Defendant, in declining to make payment under the policy, claimed that

plaintiff had exceeded the territorial limits set forth therein. The trial court found that the policy was ambiguous and rendered judgment for plaintiff. Defendant appeals.

In a printed provision headed "Navigation Limits," the policy provided as follows:

"Warranted by the Assured that the vessel be confined to ——————— during the currency of this Policy, but with leave to proceed and sail to and touch and stay at any Port or Places, if thereunto obliged by stress of weather or other unavoidable accident, without prejudice to this insurance; to sail with or without pilots, to tow and be towed and to assist vessels and/or craft in all situations and to any extent, to render salvage services and *to go on trial trips, all within the specified waters.*" (Italics added.)

The blank was filled in with the typed words, "LAID UP AND OUT OF COMMISSION IN SAUSALITO, CALIFORNIA."

■ The trial court found the policy was ambiguous in that it covered trial trips within specified waters but failed to specify any waters. We agree.

■ In reaching this conclusion, we follow the settled rule that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and that if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates. (*Century Bank* v. *St. Paul Fire & Marine Ins. Co.* (1971) 4 Cal.3d 319, 325 [93 Cal.Rptr. 569, 482 P.2d 193]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal. Rptr. 104, 419 P.2d 168].) This rule is particularly applicable to exclusions, since the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language. (*Cal. Comp. & Fire Co.* v. *Ind. Acc. Com.* (1965) 62 Cal.2d 532, 534 [42 Cal.Rptr. 845, 399 P.2d 381].)

Defendant contends the mere inclusion of the word "Sausalito" in the typed clause ipso facto renders the policy meaning clear and unambiguous. It is asserted that Sausalito contains navigable waters,[1] and that when this fact is taken into account the provision in question means that the insured vessel may take trial trips and undertake the other tasks specified, but only within the waters of Sausalito. Defendant does not maintain the reference to the vessel being "laid up and out of commission in Sausalito" authorizes no insured use of the boat and that coverage was provided only while the boat was out of commission, but, rather, that the quoted phrase means the boat was to be confined to the waters of Sausalito. It is asserted that it is

---

[1]The trial court took judicial notice of the geographical limits of Sausalito.

not necessary to use the words "waters" to describe the territorial limits of the policy and that mere reference to Sausalito is a sufficient description to satisfy the requirements of clarity.

We are unable to interpret the policy issued to plaintiff as containing any language which could properly be construed as setting forth a geographical area within which plaintiff's boat was permitted to journey.[2] Whatever other possible interpretations of the quoted language are possible, it cannot be interpreted to mean, as defendant claims, that the vessel could be employed for all the purposes set forth in the policy, but only within the strict confines of Sausalito.

If any confirmation of an ambiguity in the provision is required, it was provided at trial by defendant itself. The representative of defendant whose agency sold the policy to plaintiff testified that, contrary to defendant's version, he interpreted the policy as prohibiting the use of the vessel except for trips between its berth and a repair yard. Thus the agent, reading the same policy, finds it different, albeit more restricted, than the defendant company.[3]

In view of the conclusion that the policy was ambiguous in the respect noted above, we are not required to determine whether it contains a second ambiguity. In a printed portion of the contract, headed "Hull Insurance," under the subheading "Privileges," it is provided that the vessel may be taken on trial trips. This reference to trial trips, unlike the clause contained in the "Navigation Limits" paragraph, did not confine the vessel to the "specified waters." The trial court found that the discrepancy between these two provisions also rendered the policy ambiguous.

The parties devote much of their briefs to discussion of whether one or another portion of these assertedly conflicting provisions should predominate. However, since we decide that the policy does not contain a provision

---

[2] There is no doubt that geographic limits can be simply described. For example, defendant, in a prior policy issued to plaintiff but not delivered to him, set forth the navigation limits for his vessel as confined to "THE WATERS OF SAN FRANCISCO BAY AND TRIBUTARIES AND TO WATERS OF THE PACIFIC OCEAN WITHIN A RADIUS OF THIRTY MILES FROM MILE ROCK."

[3] Defendant argues that to interpret the policy as not specifying any geographical limits would result in a bizarre construction of its terms. Thus, it is argued, if no territorial restrictions are contained in the policy, coverage "would plainly terminate if [plaintiff] were to leave Sausalito on a non-trial voyage, would automatically reattach if he were to tow or be towed by another vessel in mid-Pacific, or if he went on drydock in Hong Kong, Liverpool or Buenos Aires, or took a trial trip in or from any such far-flung port." It may be that defendant intended but inadvertently omitted to insert in the policy a provision that the vessel be confined to waters of Sausalito. In the absence of such a provision or one which clearly has the same meaning, defendant cannot complain that the policy without the limitation it intended but failed to insert affords coverage of an unreasonable character.

setting forth any clearly definitive navigation limits and is ambiguous for this reason, we need not discuss the additional finding of ambiguity made by the trial court.

■ Finally, defendant asserts that plaintiff's boat was unseaworthy as a matter of law, thereby breaching an implied warranty of seaworthiness.[4] The trial court found as a fact that there was no breach of this warranty. Defendant's claim is based upon plaintiff's failure to have aboard his vessel a radio transmitter in operable condition. The only evidence bearing on this subject was testimony by plaintiff that it would have been a "good idea" to have a two-way radio aboard, and a statement by defendant's representative that over 80 percent of the boats with which he was familiar were equipped with radios and that it was "very advisable" to have such equipment. There is no statute or regulation requiring a vessel of the type involved here to be equipped with a two-way radio, and there was no evidence in the record which compels the conclusion that the boat was rendered unseaworthy as a matter of law by reason of the absence of a radio.[5]

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[4]Section 1920 of the Insurance Code provides: "In every marine insurance upon a ship . . . , a warranty is implied that the ship is seaworthy."

Section 1921 provides: "A ship is seaworthy when reasonably fit to perform the services and encounter the ordinary perils of the voyage contemplated by the parties to the policy."

Section 1922 states: "An implied warranty of seaworthiness is complied with if the ship is seaworthy at the time of the commencement of the risk, except . . .:

"(a) When the insurance is made for a specified length of time, the implied warranty is not complied with unless the ship is seaworthy at the commencement of every voyage it undertakes during that time. . . ."

Section 1923 states: "A warranty of seaworthiness extends not only to the condition of the structure of the ship itself, but also requires that it be properly laden and provided with: . . .

"(c) The requisite appurtenances and equipments.

"(d) Other necessary or proper stores and implements for the voyage."

[5]Defendant cites in support of its claim of unseaworthiness a case in which it was held that the failure of a tug to have on board a radio receiver to receive weather reports rendered the vessel unseaworthy in spite of the fact that no statute required such equipment. (*The T. J. Hooper* (S.D.N.Y. 1931) 53 F.2d 107, affd. in 60 F.2d 737.) However, in that case there was testimony that a radio was part of the "necessary equipment" of any reasonably well-equipped tug in the coastwise service. (53 F.2d 107 at p. 111.)