F. S. SMITHERS & CO., INC., a Corporation, Plaintiff–Appellant,

v.

FEDERAL INSURANCE COMPANY, a Corporation, Defendant–Appellee.

No. 77–3915.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 19, 1980.

Decided Nov. 10, 1980.

John E. Sparks, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiff–appellant.

Ron W. Fields, San Francisco, Cal., for defendant–appellee; David E. Bunim, San Francisco, Cal., on brief.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

This is a diversity action under California law based on an alleged breach of an insurance contract. F. S. Smithers and Co. (Smithers) appeals from the district court's order granting summary judgment in favor of Federal Insurance Co. (Federal) and denying Smithers' motion for summary judgment. We affirm.

## FACTS

### The Bond

Smithers was a financial service company that operated a retail securities business in the early 1970's. On February 23, 1973 Federal issued a broker's blanket bond to Smithers effective December 31, 1972. Coverage under the bond included indemnification for losses resulting from dishonest or fraudulent trading of securities by its employees. The bond specifically excluded any loss "not discovered prior to termination of this bond as a entirety." [1]

Smithers discontinued its retail brokerage operations in June 1973. In light of this fact, its president, Lester Reeve, executed an amendment to the bond, Endorsement No. 7. This Endorsement was issued and was effective on June 29, 1973. Endorsement No. 7 reduced coverage for dishonest or fraudulent trading by employees from $1,000,000 to $100,000. [2]

Between late 1973 and early 1974, Smithers disposed of most of its security inventory. In April 1974, Reeve executed an additional amendment to the bond, Endorsement No. 8, eliminating Smithers' fraudulent trading coverage "effective with losses discovered on and after the date of this Endorsement . . . ." (December 1, 1973). [3] The amended bond remained in effect providing coverage for other types of losses.

### The Feichtmeir Suit

In May 1974 Hazel Feichtmeir filed a securities fraud action in federal court naming Smithers among the defendants. The complaint alleged that from October 1972 through June 1973 an employee of Smithers

---

1. Relevant provisions of the bond are:

1. DISHONESTY COVERAGE
(a) Any dishonest or fraudulent act or acts committed by any of the Assured's officers, employees, guest students or attorneys retained to perform legal services for the Assured and employees of such attorneys while performing such services, all herein called Employees, wherever committed and whether committed alone or in collusion with others.
The liability of the Company for any loss covered under this Insuring Clause 1(a), resulting directly or indirectly from trading, including all transactions involving the purchase or sale of securities, shall be limited as provided in Item 3(a) of the Declarations of this bond, notwithstanding the amount stated in Item 2 of the said Declarations.

Item 3. Limitations of Bond Amount:
(a) Insuring Clause 1(a)—Dishonest or Fraudulent Trading by Employees
_____ $1,000,000.00

SECTION 1. EXCLUSIONS:
THIS BOND DOES NOT COVER:
(a) Any loss: (1) not discovered prior to termination of this bond as an entirety,
SECTION 16. CHANGE OR MODIFICATION
This bond or any instrument amending or affecting same may not be changed or modified orally. No change in or modification thereof shall be effective unless made by written endorsement issued to form a part hereof over the signature of the Company's Vice President or Assistant Vice President.

2. Endorsement No. 7 provided:
In consideration of the premium charged for the above described bond to which this Endorsement is attached it is understood and agreed that effective with losses discovered on and after the date of this Endorsement Items 2 and 3 of the Declarations of the said bond are hereby deleted and the following substituted in lieu thereof:

Item 2. Bond Amount . . . . . . . . . . $2,500,000.00

Item 3. Limitations of Bond Amount:
(a) Insuring Clause 1(a) Dishonest or Fraudulent Trading by Employees . . . . . . . . . . . . . . $100,000.00

3. Endorsement No. 8 provided:
In consideration of the premium charged for the above described bond to which this Endorsement is attached, it is understood and agreed that, effective with losses discovered on and after the date of this Endorsement, Items 2 and 3 of the Declarations of the said bond, are hereby deleted and the following substituted in lieu thereof:

Item 2. Bond Amount . . . . . . . . . . $2,500,000.00

Item 3. Limitations of Bond Amount:
(a) Insuring Clause 1(a)—Dishonest or Fraudulent Trading by Employees . . . . . . . . . . $ Not Covered"

had engaged in a number of dishonest and fraudulent practices in the handling of the Feichtmeir account that resulted in substantial losses.[4]

Smithers tendered defense of the suit to Federal. Although Federal did not acknowledge coverage, Smithers kept it informed of the progress of the litigation and the settlement negotiations. After settling the suit for $75,000 Smithers requested a $50,000 reimbursement from Federal. (The bond had a $25,000 deductible.) Federal refused to reimburse Smithers and Smithers filed this suit for indemnification and for attorneys' fees under the bond.[5]

On cross–motions for summary judgment, the district court granted Federal's motion and denied Smithers' motion. The court held that as a matter of law the language of the bond and its Endorsements were not ambiguous regarding coverage for fraudulent acts of employees. The court found that Smithers had not discovered a fraudulent loss until Endorsement No. 8 had terminated coverage for this type of loss.

Smithers filed a timely notice of appeal and raised three issues: (1) whether the Federal bond and its Endorsements were ambiguous regarding coverage for losses sustained; (2) whether Federal had a duty to defend Smithers; and (3) whether a question of material fact existed as to Reeve's intent in amending the coverage under the bond.

*DISCUSSION*

■ Summary judgment may be granted only when "the moving party has demonstrated the absence of any issue of material fact and the right to judgment as a matter of law." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). On appeal all evidence and inferences therefrom must be viewed "in the light most favorable to [Smithers] the party opposing the motion." *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir. 1980). We must take the facts as introduced by Smithers in its affidavits and discovery materials "as true and [resolve] all doubts in its favor . . . ." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 873 (9th Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

## I. THE ALLEGED AMBIGUITY

■ Smithers challenges the district court's finding that the bond and its Endorsements were unambiguous regarding coverage of the Feichtmeir claim. Under applicable California law, whether a contract is ambiguous is a question of law for the court to decide. *Id.* at 871; *Airborne Freight Corp. v. McPherson*, 427 F.2d 1283, 1285 (9th Cir. 1970) (interpreting California law). We may consider extrinsic evidence on the question of ambiguity regardless of the apparent lack of ambiguity on the face of a contract. *Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 564, 442 P.2d 641, 644 (1968). Having reviewed all evidence presented we agree with the district court's finding of unambiguity.

---

**4.** These alleged practices included churning the account to generate extra commissions, purchasing highly speculative securities unsuitable for the Feichtmeir account, purchasing securities on margin for the account, selling to Feichtmeir securities which Smithers owned and for which it acted as market-maker without disclosing these facts and their significance to Feichtmeir and purchasing securities for Feichtmeir's account without fully and fairly revealing the risks involved. In addition the complaint alleged that Smithers had breached its duties and obligations to Feichtmeir by failing to institute and maintain an adequate system of supervision and control of its employee and his handling of the Feichtmeir account and by failing to inform Feichtmeir that her account had been improperly handled by its employee.

**5.** Section 8 of the Bond provided in part:

8. COURT COSTS AND ATTORNEYS' FEES COVERAGE

Court costs and reasonable attorneys' fees incurred or paid by the Assured in defense, whether or not successful, of any claim, suit or legal proceeding with respect to which the Assured establishes that the act or acts which occurred would entitle the Assured to recovery under this bond if any loss resulted therefrom; provided, however, that payment made on any claim under this bond, including any payment for court costs and attorneys' fees, shall not exceed the amount stated in Item 2 of the Declarations of this bond, or the amount stated in the applicable section of Item 3 of the said Declarations, whichever is less.

## A. *The Language of the Bond and its Endorsements*

Smithers asserts that Endorsement No. 8 created an ambiguity as to when coverage for an employee's fraudulent act terminated. The blanket bond itself excluded any loss "not discovered prior to termination of this bond as an entirety." [6] The entire bond was not terminated until June 1977. Thus, Smithers contends that Endorsement No. 8, which terminated coverage for fraudulent and dishonest trading by employees effective with losses discovered on and after December 1, 1973, is in direct conflict with that language.[7] Smithers alleges that this discrepancy creates an ambiguity that must be resolved in favor of Smithers' reasonable expectation of coverage.[8]

Smithers' argument ignores the fact that Endorsement No. 8 was a valid modification to the original agreement. Reeve, as president of Smithers, was specifically authorized to execute a written modification of the bond.[9] Endorsement No. 8, signed by Reeve, can reasonably be construed as a modification of the Exclusion clause. Therefore, we find that no conflict or ambiguity was created by Endorsement No. 8.

Additionally, Smithers asserts that the term "losses discovered" in Endorsement No. 8 is ambiguous. Smithers alleges that "losses discovered" could be construed to mean that a loss is "discovered": (1) when a loss occurs in a customer's account; (2) when the customer makes a claim against the insured; (3) when the claim is settled or a judgment is paid. Smithers asks that we construe the term "losses discovered" to mean "occurrence of a loss in a customer's account." According to Smithers' interpretation, once a known loss occurs, the insured is covered even though the fraudulent nature of the loss is not discovered until after coverage under the bond has terminated. We find this interpretation of "losses discovered" totally unreasonable.

Any ambiguity resulting from the term "losses discovered" under the remaining two constructions is irrelevant. Smithers' coverage was for fraudulent losses. By Reeve's own admission, the fraudulent nature of the loss was not discovered until May 1974. We conclude, that inasmuch as a fraudulent loss was not discovered by Smithers until after coverage was terminated, no reasonable interpretation of the term "losses discovered" could benefit Smithers. *Cf. Continental Insurance Co. v. Morgan, Olmstead, Kennedy & Gardner, Inc.*, 83 Cal. App.3d 593, 148 Cal.Rptr. 57 (1978) (covered loss discovered while policy in force).

## II. *FEDERAL'S DUTY TO DEFEND*

Smithers contends that under *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966), Federal breached its duty to defend. *Gray* held that an insurer had the duty to defend its insured in a personal injury suit by a third party when the party's complaint potentially sought "damages within the coverage of the policy. . . ." *Id.* at 275, 54 Cal.Rptr. at 112, 419 P.2d at 176; *St. Paul Fire & Marine Insurance Co. v. Sears, Roebuck and Co.*, 603 F.2d 780, 786 (9th Cir. 1979). We find *Gray* inapposite to the case at bar.

In *Gray*, the policy language was ambiguous regarding the extent of coverage.[10]

---

**6.** *See* note 1 *supra*.

**7.** *See* note 3 *supra*.

**8.** *See Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219 (1973); *Century Bank v. St. Paul Fire & Marine Ins. Co.*, 4 Cal.3d 319, 93 Cal.Rptr. 569, 482 P.2d 193 (1971); *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961).

**9.** *See* note 1 *supra*.

**10.** The third party had alleged in the complaint that the insured had intentionally caused him bodily injury. The policy specifically excluded coverage for intentional injuries. The court in *Gray* reasoned that it could not be ascertained whether the third party suit did or did not fall within the policy coverage until the suit was concluded. 65 Cal.2d at 271, 54 Cal.Rptr. at 109, 419 P.2d at 173. In other words, though the third party had alleged intentional conduct, the nature of Gray's conduct could not be determined until after the adjudication of the specific action which the insurer should have defended.

Moreover, the policy in *Gray* bound the insurer to defend any suit against the insured in which bodily injury was alleged, "even if any of the allegations [were] groundless, false or fraudulent...." 65 Cal.2d at 267, 54 Cal.Rptr. at 106, 419 P.2d at 170. The broad language of this defense clause coupled with the ambiguous nature of the exclusionary clause led the *Gray* court to conclude that the insured had a reasonable expectation of coverage and that the insurer had breached its duty to defend. Those circumstances are simply not present here.

Smithers asserts that the Feichtmeir complaint stated a claim potentially covered by the bond and therefore that it had a reasonable expectation of coverage. We find this argument without merit. Having found Endorsement No. 8 unambiguous, we conclude that the Feichtmeir claim clearly was not covered by the Federal bond. *See Wachovia Bank & Trust Co. v. Manufacturers Casualty Insurance Co.*, 171 F.Supp. 369 (M.D.N.C.1959).

*Gray* can be further distinguished in that the California Supreme Court characterized the personal injury policy as an adhesion contract–the consumer had unequal bargaining power and the insurance policy was offered to him on a "take–it–or–leave–it" basis. 65 Cal.2d at 269–71, 54 Cal.Rptr. at 107–109, 419 P.2d at 171–73. Smithers, on the other hand, was a sophisticated business enterprise that initiated the Endorsements and decreased coverage to fit its own financial needs. Smithers evidently decided to modify its coverage under the bond and to take a calculated risk that no subsequent fraudulent liability would be discovered.

Based on the totality of circumstances presented we find no basis for concluding that Smithers had a reasonable expectation of coverage. Thus, Federal had no duty to defend Smithers. *Helper v. Fireman's Fund Insurance Co.*, 239 So.2d 669 (La.App. 1970); *Farmers & Merchants State Bank v. St. Paul Fire & Marine Insurance Co.*, 309 Minn. 14, 242 N.W.2d 840 (1976).

III. *THE ALLEGED DISPUTED QUESTIONS OF MATERIAL FACT*

Smithers contends that the district court on summary judgment decided a question of material fact, namely, what Reeve's intent was in executing Endorsement No. 8. We find this allegation without merit.

Smithers asserts that Reeve's sole intention in signing Endorsement No. 8 was to discontinue occurrence coverage for fraudulent loss on a prospective basis. We must focus on the final agreement of the parties, looking to objective not subjective factors in determining their intent. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d at 873. The language of the Endorsement clearly states that losses resulting from employee fraud would not be covered by Federal if discovered after December 1, 1973. Therefore, when Reeve signed Endorsement No. 8 he agreed that Smithers would be liable for any fraudulent loss discovered after that date. Whatever his subjective intent may have been at that moment is irrelevant.

AFFIRMED.