[Civ. No. 54451. First Dist., Div. Three. Feb. 22, 1985.]

SANTA CLARA SAVINGS AND LOAN ASSOCIATION,
Plaintiff and Appellant, v.
VICTOR M. PEREIRA et al., Defendants and Appellants.

**COUNSEL**

Ferrari, Alvarez, Olsen & Ottoboni, John M. Ottoboni and Anne L. Enea for Plaintiff and Respondent.

Campbell, Warburton, Britton, Fitzsimmons & Smith, William T. Brooks and Virginia L. Turner for Defendants and Appellants.

**OPINION**

**WHITE, P. J.—**

*Introduction:*

This case raises the narrow question of whether a lender may enforce a due-on-sale clause contained in the provisions of a deed of trust (executed

in 1979), when the party who purchases the real property from the trustor refused to provide the lender with credit information. We affirm the trial court's judgment that in such circumstances the lender may accelerate the obligation due under the loan.

*Background:*

The facts are not in dispute. On August 30, 1979, Joseph and Kay Orlando (hereafter trustors) executed a promissory note for $105,000 in favor of Santa Clara Savings and Loan Association (hereafter lender or Santa Clara Savings), and a first deed of trust as security. The subject property is residential, and was occupied by the Orlandos at the time the note and deed were signed. The transaction between the Orlandos and lender was for the purpose of refinancing the Orlandos' home.

On December 12, 1979, the Orlandos conveyed the property to appellants Victor and Carolina Pereira and Maria Braga (hereafter buyers, or Pereira, et al.). The selling price was $168,500 and the buyers paid a cash down payment of $63,488.67, almost 40 percent of the price. They took title "subject to" the first trust deed in the amount of $104,968.13.

Sometime later lender received a letter from Lawyers Title Insurance Company dated December 24, 1979, advising that the loan in the Orlandos' name had been "assumed," and enclosing a copy of the grant deed conveying the property to Pereira, et al. Santa Clara Savings therefore wrote to Pereira, et al., asking them to fill out forms requesting financial information, so that lender could determine whether its security was "likely to be impaired" by the transfer of title. The lender also stated in the letter: "Only after making that determination will we be in a position to accept the transfer and send you a coupon brochure to make future payments on the loan."

When buyers did not respond to this letter, lender sent another one, again requesting credit information, enclosing forms, and explaining that current information was needed for the lender to make an "informed judgment" as to whether it would "accept the transfer."

A final letter was sent in February 1980, in which Santa Clara Savings again requested that Pereira, et al. complete the forms, and also discussed its position under the *Wellenkamp* case. (*Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970].) The letter included this statement: "It is not our desire to foreclose on loans, but you must co-operate with us by giving us the requested credit information and details of the purchase transaction so that we can make the determination which we hope and expect will be favorable to you."

On March 27, 1980, the lender filed a complaint for declaratory relief against the Orlandos, as trustors, and against the buyers, seeking a declaration that it had the right to accelerate the obligation due under the promissory note signed by the Orlandos August 30, 1979, "upon the refusal and/or failure of defendants PEREIRA and BRAGA their successors in interest to provide adequate evidence of creditworthiness to plaintiff and to meet acceptable standards of creditworthiness[.]"

Trial was held November 25, 1980, and the cause was submitted on the basis of oral argument, briefs filed by both parties, and a stipulated statement of facts. Amended findings of fact and conclusions of law were filed on March 31, 1981, after a hearing on those matters.

On April 7, 1981, the trial court filed a judgment holding that the failure of the buyers to provide adequate financial information to the lender within 15 days would constitute an event of default under the deed of trust entitling the lender to record a notice of default and intention to sell. The trial court also held that adequate financial information means "such evidence as will enable [lender] to make an objective determination, applying its regular and customary standards, whether [buyers] would qualify, on the basis of such information, for a loan on the same terms, in the same amount, and secured by the same property as the original loan made by [lender] on the property which is the subject property in this litigation. . . ." In addition, lender was awarded costs but not attorney's fees.

Buyers appeal from that portion of the judgment declaring their obligation to provide credit information. Lender appeals from that portion of the judgment denying attorney's fees.

*Discussion:*

■ The leading case of *Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d 943,[1] held that "a due-on-sale clause contained in a promissory note or deed of trust cannot be enforced upon the occurrence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Id.,* at p. 953, fns. omitted.)

---

[1]We are aware of recent changes in federal law providing that due-on-sale clauses such as the one involved here are generally enforceable. The instant case, however, clearly falls within the "window period" expressly set out in 12 United States Code section 1701j-3(c)(1), which invalidated all state legislative and judicial restrictions on the enforceability of such clauses. Applying the terms of the statute to California, the "window period" is from August 25, 1978, the date of *Wellenkamp,* through October 15, 1982. The original promissory note containing the due-on-sale clause in the instant case was dated August 30, 1979. It is therefore not preempted by federal law.

The trial court concluded that, "[n]ecessarily implied in the *Wellenkamp* decision . . . is the lender's right to obtain, and the borrowers' and the new owners' duty to provide, sufficient information related to the creditworthiness of the new owner to enable the lender to make an informed determination whether the transfer impairs the security or increases the risk of default." We agree.

The overriding policy concern in *Wellenkamp* was how to avoid unreasonable restraints on alienation and at the same time protect lenders. Many cases since *Wellenkamp* have wrestled with the same problem, and the court in *Taormina Theosophical Community, Inc.* v. *Silver* (1983) 140 Cal.App.3d 964 [190 Cal.Rptr. 38] observed that "[i]n determining whether a restraint is unreasonable, the court must balance the justification for the restriction against the quantum of the restraint. The greater the restraint, the stronger the justification must be to support it. [Citation.]" (*Id.*, at p. 973; see also *Wilhite* v. *Callihan* (1982) 135 Cal.App.3d 295, 300 [185 Cal.Rptr. 215].)

In the instant case buyers acknowledge that this is the focus mandated by *Wellenkamp* and prior cases. Nevertheless, the thrust of much of their argument is that lender has failed to show that acceleration is necessary because its security has been impaired or it faces an increased risk of default. This argument misses the point, or at least is premature, since the controversy in the instant case is not really over a decision by the lender to accelerate. Rather, it is over the buyers' refusal to provide the information requested by the lender in order to have a reasonable basis on which to decide *whether* to accelerate.

The trial court did question lender's counsel as to whether other channels of access to credit information could have been utilized. Buyers did not refute counsel's explanation that the buyers' cooperation would also be needed in order for the lender to have access to such information. For example, a current employer would not release information without the employee's permission. Moreover, we note that certain information requested on the lender's form might not be discoverable through any other means; for example, the form asks whether any part of the down payment was borrowed. If a buyer had obtained a personal loan, for example from a family member, the resulting indebtedness would be unlikely to show up in institutional credit records. We think that lender's point that the buyers themselves have the most current, complete and accurate information about their own finances is well taken.

A theme in buyers' position at trial, repeated on appeal, is that the lender has some illegitimate purpose in requiring the buyers to fill out financial

data forms at the time of transfer. They identify this purpose as an attempt by the lender to "[maintain] its portfolio at current interest rates." Again, this argument is premature. There has been no showing that, had buyers completed the usual financial information forms, the lender would have accelerated the obligation due under the promissory note. It was the refusal of the buyers to provide information which triggered the acceleration.

The trial court's judgment amounts to a ruling that such a refusal amounts to an increased risk as a matter of law.

The focus in such circumstances should be on whether requiring the buyer to provide credit information creates an unreasonable restraint on alienation in view of the lender's need for it. Since there is already law which would prevent a lender from using a transfer of title to renegotiate the terms of the loan merely to impose a higher interest rate (see *Dawn Investment Co. v. Superior Court* (1982) 30 Cal.3d 695, 699-700 [180 Cal.Rptr. 332, 639 P.2d 974]), we cannot see how this requirement imposed by the trial court creates a restraint against alienation in any measurable degree. On the other hand, since the law imposes on the lender the duty to investigate the buyer's finances before making a decision whether to accelerate, there is substantial justification for imposing an obligation on the buyer to provide such information.

Both parties discuss whether lender would be able to obtain a deficiency judgment against trustors in the event of a judicial foreclosure where the sale of the property did not recover the full indebtedness. It is not necessary for us to resolve this question, however, because even if the lender could obtain such a judgment, we think that on balance, requiring buyers to provide credit information is nevertheless justifiable.

*Wellenkamp* would allow the lender to accelerate trustor's obligation under the original promissory note in the event of an outright sale of the property, if it could show that by virtue of the transfer, there was an increased risk of default. (*Wellenkamp, supra,* 21 Cal.3d at p. 953.) The lender is not allowed to use a transfer of title to justify an automatic acceleration or increase in interest rates. On the other hand, neither is it required to accept a change of circumstances which makes its position more precarious.

Any credit transaction by its very nature involves some risk to the creditor. Appellants have advanced no rationale to justify requiring a creditor to accept an *increased* risk. In the instant case, at the time appellants took title to the property, they began to make payments to respondent on the original loan. Although not "assuming" the loan since they took the prop-

erty "subject to" the first trust deed, there is no dispute that they are the parties who have undertaken to make these payments. We note that the *Wellenkamp* court explicitly included transfers of title taken subject to an existing deed of trust as a type of outright sale which comes within its holding. (*Wellenkamp, supra,* 21 Cal.3d at p. 950.) Should the buyers in the instant case fail to make payments there is no question that this would constitute a "default" under the terms of the original loan.

■ As a matter of fact implicitly acknowledged in the *Wellenkamp* decision, if the new buyers are not at least as creditworthy at the time title is transferred, as the original trustor was when the first deed of trust was negotiated, then the risk that a default will occur is increased. This situation triggers the lender's right to accelerate the obligation under the original loan terms.

We are aware that, in *West* v. *Buffo* (1983) 139 Cal.App.3d 93 [188 Cal.Rptr. 535], the court relied on the fact that the buyers had paid a large down payment which was substantially greater than that paid by the trustors to conclude that the buyers were a "better risk than the [trustors] and have a greater incentive not to commit waste and to prevent the depreciation of the property." (*Id.,* at p. 95.) The *West* court reversed the trial court's denial of an injunction to halt a foreclosure.

■ In our view, nevertheless, in the instant case lender was entitled to access to all of the usual relevant financial information which would be revealed by its standard credit check in order to reasonably ascertain *at the time of the outright sale* that buyers' *apparent* creditworthiness was in fact the case. We do not read post-*Wellenkamp* cases to require that the lender *must* rely *solely* on a substantial down payment and regular installment payments, as the only basis for determining at the time of transfer that an increased risk of default exists as a result of the transfer. In *Wilhite* v. *Callihan, supra,* 135 Cal.App.3d 295, for example, which refused to allow acceleration, the trial court had expressly found that the buyer had cured a default in installment payments, the value of the property had increased, *and* the buyers were "more creditworthy" than the original trustors. (*Id.,* at p. 298, italics added.)

Even in the apparently auspicious circumstances of a hefty down payment and the commencement of regular installment payments, we do not believe that a lender may be automatically precluded from enforcing a due-on-sale clause in spite of any other facts or circumstances which would justify a reasonable determination that an increased risk of default exists. Admittedly under *Wellenkamp* and subsequent cases the burden lender carries in such

circumstances is a heavy one. But lender is entitled to make the necessary showing if there are facts to support it, and therefore it is entitled to have reasonable access to the information from which it could glean those facts.

Thus we conclude that the burden imposed on the lender under *Wellenkamp* necessarily implies a duty in the new buyer to provide relevant credit information requested by the lender. Where the buyer refuses to provide such information, it is reasonable for the lender to conclude that there is an increased risk of default, and to accelerate the obligation it is owed under an existing first deed of trust.

■ We turn to the trial court's refusal to award attorney's fees to lender, who appeals from that decision.

Lender argues that it was entitled to recover attorney's fees under Civil Code section 1717 which provides that the prevailing party in an action on a contract is entitled to reasonable attorney's fees, "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party. . . ."

Paragraph 7 of the deed of trust provides in pertinent part: "If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, . . . then Lender . . . may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees. . . . [¶] Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust."

Pereira, et al., argue that Santa Clara Savings has no right to attorney's fees under either prong of this provision. First, Pereira, et al. maintain that they did not fail to perform a covenant or agreement contained in the deed of trust, because neither the deed itself nor relevant case law required a nonassuming grantee to provide credit information as demanded by lender. This of course is the heart of the dispute in the case, and the question was resolved against Pereira, et al., by the trial court and by this court. Pereira, et al. assert that since the trial court's order was stayed pending appeal, they have not failed to perform under the terms of the deed of trust. We

disagree. The trial court concluded that *Wellenkamp* imposed a duty on buyers to provide credit information to the lender. Clearly this duty is an implied term of the deed of trust. It arises from the status of the parties under that deed, and the nature of the transaction transferring title to buyers. The duty does not arise from the order of the court. Thus we conclude that Santa Clara Savings was entitled to recover fees under this provision.

Second, Pereira, et al., argue that under paragraph 7 the lender may take action necessary to protect its interests, but that such an action may not include an attempt to enforce an acceleration clause. This argument is a curious one, not supported by reasoning or authority, and appears to be based on a bald assertion which is directly contradictory to the express language of paragraph 7, which states that ". . . if *any action* or proceeding is commenced which materially affects Lender's interest in the Property, *including, but not limited to,* eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees. . . ." (Italics added.)

In the instant case the lender sought and obtained a declaratory judgment which held that it had the right to record a notice of default and intention to sell if buyers continued to fail to perform their duty to provide credit information. This action certainly affected lender's interest in the property, and the disbursement of attorney's fees was necessary to protect that interest. Therefore, lender was entitled to attorney's fees under this aspect of paragraph 7 as well.

*Conclusion:*

Insofar as the judgment of the trial court held that buyers have a duty to provide adequate financial information to lender regarding the creditworthiness of Victor and Carolina Pereira and Maria Braga, and that their continuing failure to provide such information would constitute an event of default under the deed of trust, it is affirmed. The denial of attorney's fees to lender, however, is reversed. Santa Clara Savings and Loan Association is entitled to recover attorney's fees and costs on appeal, and attorney's fees arising from the trial. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 637 [186 Cal.Rptr. 754, 652 P.2d 985].)

The cause is remanded to superior court for a determination of the amount to be recovered.

Scott, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied March 22, 1985.