Filed 12/30/21  Rezapour v. U.S. Bank Nat. Assn. CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ARI REZAPOUR et al., <br><br> Plaintiffs and Appellants, <br> v. <br><br> U.S. BANK NATIONAL ASSOCIATION et al., <br><br> Defendants and Respondents. | A155505, A156855 <br><br> (Contra Costa County <br> Super. Ct. No. MSC1702246) |

In this consolidated appeal, plaintiffs Ari and Aurora Rezapour appeal from a judgment in favor of defendants U.S. Bank N.A., as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificate Series 2007-7 (U.S. Bank), Nationstar Mortgage LLC (Nationstar), and Specialized Loan Servicing LLC (SLS), and from a postjudgment order granting SLS's motion for attorney fees.  Plaintiffs filed this lawsuit to preempt a nonjudicial foreclosure sale of their home by alleging that the foreclosing entity lacked the authority to proceed with the sale.  The trial court sustained demurrers to plaintiffs' second amended complaint without leave to amend on the ground that plaintiffs lacked standing to challenge the foreclosing entity's authority because their allegations of "forgery," even if true, would only render the assignment of the note and deed of trust voidable at the injured

1

party's option, not void.  In awarding attorney fees to SLS, the court found that although SLS was not a signatory to the promissory note and deed of trust containing the attorney fee clauses, it was entitled to fees because it " 'stood in the shoes' " of the loan beneficiary.  We affirm the judgment but reverse the order awarding SLS its attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

We take the following factual allegations from the complaint.

Plaintiffs are the owners of property located in Lafayette (the property).  They purchased the property in 2007 after obtaining a purchase money mortgage from Bank of America, N.A. (BofA) in the amount of $1.46 million.  The mortgage was secured by a deed of trust on the property.  According to the complaint, plaintiffs "still currently reside" at the property.

The complaint alleges a conspiracy among defendants and various individuals to deprive plaintiffs of the protections of California nonjudicial foreclosure law.  Specifically, plaintiffs allege that in August 2012, one Loryn Stone, falsely holding herself out as an "Assistant Vice President" at BofA, "forged" a substitution of trustee naming Recon Trust Company as foreclosure trustee, and then "forged" an assignment of the deed of trust from BofA to defendant U.S. Bank.  Stone also recorded a notice of default on the property.

Plaintiffs further allege a long series of additional transactions beginning in March 2014, when Robin Mathews, falsely holding herself out as a "Vice President" of defendant SLS, attorney-in-fact for BofA, executed and recorded a corrective assignment of the deed of trust from BofA to U.S. Bank.  SLS then transferred servicing of the loan to defendant Nationstar, and Jorge Valadez, falsely holding himself out as a "Vice President" of Nationstar, executed and recorded a substitution of trustee in favor of Veriprise, which

2

recorded a notice of default on the property.  More than a year later in December 2016, Dustin Chmeilewski, falsely holding himself out as an "Assistant Secretary" of U.S. Bank, recorded a substitution of trustee naming Les Zieve as foreclosure trustee, and Zieve recorded yet another notice of default on the property.  In March 2017, another substitution of trustee was recorded, this time by Carol Davis allegedly on behalf of Nationstar, naming Clear Recon Corporation as foreclosure trustee.  Davis "never had any lawful or corporate authority to execute this substitution."  Clear Recon Corporation recorded another notice of default, and in October 2017, a notice of trustee sale of the property.

In short, plaintiffs allege that "[t]he notice of trustee sale and the substitutions and the notices of default and the assignments [of the deed of trust] since 2012 are void and invalid due to the fact that Loryn Stone, Robin Mathews, Jorge Valadez, Dustin Chmeilewski, [and] Carol Davis, did not have the lawful authority to execute the documents they did."  Thus, "[a]s a result of these fraudulent and forged assignments, defendants, and none of them, have the lawful nor legal right to foreclose upon the property."

The complaint asserts causes of action against defendants for (1) declaratory judgment; (2) violation of statutes (Civ. Code, §§ 2924, subd. (a)(6), 2924.17, & 1227); (3) "unlawful and attempted foreclosure"; (4) cancellation of recorded instruments; (5) unfair business practices under the Unfair Competition Law (Bus. & Prof. Code, § 17200 (UCL)); and (6) slander of title.

SLS and U.S. Bank each generally demurred to the complaint.  The trial court tentatively ruled that plaintiffs failed to state sufficient facts to constitute a cause of action because under *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*), a borrower only has standing to

3

challenge the validity of a loan assignment that is void, not merely voidable, and plaintiffs' forgery allegations did not support the conclusion that the assignments of the deed of trust were void. The court additionally found that plaintiffs failed to allege (1) tender of the amounts due under the loan; (2) economic harm caused by defendants' conduct for purposes of the UCL claim; and (3) malice to overcome the common interest privilege of Civil Code section 47[, subdivision (c)], for purposes of the slander of title claim. After a hearing on the demurrer, the court adopted its tentative ruling and entered judgment in favor of defendants.

Thereafter, SLS moved for an award of attorney fees in the amount of $31,215. SLS argued that as a prevailing party against plaintiffs, it was contractually entitled to attorney fees under section 6(E) of the promissory note and sections 9, 14, and 22 of the deed of trust, provisions that SLS could assert despite being a nonsignatory because it " 'stood in the shoes' " of the loan beneficiary, U.S. Bank. In support of the motion, SLS submitted the declaration of Ami McKernan, second assistant vice president of SLS, who averred that SLS acted as the loan servicer for the subject mortgage and that plaintiffs were in default on the loan.

The trial court granted the motion, finding that "[b]oth the promissory note and deed of trust executed by Plaintiffs contained provisions for an award of attorney's fees in all actions related to the loan," and that although SLS was not a signatory to the note and deed of trust, "it is undisputed that [SLS] was the loan servicer. The Court finds as the loan servicer, [SLS] 'stood in the shoes' of the loan beneficiary." The court further concluded that the amount of fees sought by SLS was reasonable. Finally, the court overruled plaintiffs' objections to the McKernan declaration, and, in response

4

to SLS's objections to the declaration of plaintiffs' counsel, "considered said declaration as argument and not evidence."

Plaintiffs appealed from the judgment and the order granting SLS's motion for attorney fees.[1]  On our own motion, we consolidated the appeals for purposes of argument and opinion.

## DISCUSSION

### A. Demurrer

On appeal from an order sustaining a general demurrer, we review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.)  " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' "  (*Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1781.)

#### *1. Borrower Standing in Wrongful Foreclosure Actions*

The central issue raised in this appeal is whether plaintiffs have standing preemptively to challenge U.S. Bank's authority to foreclose on the property based on allegations that certain foreclosure documents, including the assignments of the deed of trust from BofA to U.S. Bank, were "forged." To state a claim for wrongful foreclosure generally, a plaintiff must allege that the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property, the plaintiff suffered prejudice or harm, and the plaintiff tendered or was excused from tendering the amount of the secured indebtedness.  (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th

---

[1]  The notice of appeal in case No. A155505 originally identified a judgment in favor of "Select Portfolio Servicing," but there was no party by that name.  After we requested clarification, plaintiffs amended the notice of appeal to reflect SLS as respondent.

5

1052, 1062.) "Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 809 (*Mendoza*).) In the foreclosure context, standing denotes "a borrower's legal authority to challenge the validity of an assignment." (*Yvanova, supra*, 62 Cal.4th at p. 928, fn. 3.)

In *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, and *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, disapproved in part in *Yvanova, supra*, 62 Cal.4th at p. 939, fn. 13, the appellate courts held that under California's comprehensive and exhaustive statutory scheme for nonjudicial foreclosures, a borrower is not permitted to bring a preemptive judicial action to challenge the right, power, and authority of the foreclosing beneficiary or its agent to initiate and pursue foreclosure. (*Jenkins*, at pp. 511–512; *Gomes*, at pp. 1154–1157.) As an alternative basis for its decision, *Jenkins* further held that the plaintiff's allegation of an improper transfer of the assignment of the note and deed of trust to an investment trust during the securitization process was insufficient to withstand demurrer. (*Jenkins*, at pp. 513–515.) According to *Jenkins*, the plaintiff was not the victim of the invalid transfer of the assignment of the deed of trust, but was an unrelated third party, and she therefore lacked standing to sue on the investment trust's pooling and servicing agreement relating to the transfer. (*Ibid.*)

In *Yvanova*, the Supreme Court disapproved of this latter portion of *Jenkins*, concluding that a borrower has standing to maintain a postsale suit for wrongful foreclosure if he or she alleges facts that, if true, would render the assignment of the deed of trust to the foreclosing entity "void, and not merely voidable at the behest of the parties to the assignment." (*Yvanova*,

6

*supra*, 62 Cal.4th at pp. 923, 934–939 & fn. 13.) As the court explained, if a borrower alleges a void assignment of the deed of trust to the foreclosing entity, the assignment has "no legal force or effect whatsoever [citation], [and] the foreclosing entity has acted without legal authority by pursuing a trustee's sale." (*Id.* at p. 935.) In this circumstance, the borrower is not attempting to assert the rights of other parties to the agreement giving rise to the assignment, but rather, is asserting its own right not to have its home unlawfully foreclosed upon. (*Id.* at pp. 935–936.) Central to the decision in *Yvanova* is the distinction between void and voidable assignments, as a void transfer "cannot be ratified or validated by the parties to it even if they so desire," but "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so." (*Id.* at p. 936.)

*Yvanova*'s holding was a narrow one, as the court did not decide whether or not the assignment of the deed of trust to an investment trust after the trust's closing date was void. (*Yvanova*, *supra*, 62 Cal.4th at pp. 924, 925.) Furthermore, the scope of review in *Yvanova* did not extend to the question of whether a preemptive wrongful foreclosure action is permissible. (*Yvanova*, at pp. 924, 934 ["We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed"].) Plaintiffs nonetheless maintain that *Yvanova*'s recognition of borrower standing should apply to their presale action. On-point authority is to the contrary (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814–815

(*Saterbak*)),[2] but even if we assume for the sake of argument that a preforeclosure action alleging a void assignment of the deed of trust to the foreclosing party is permissible, the question remains whether plaintiffs' allegations of forgery support a claim that the challenged foreclosure documents are void, rather than merely voidable at the injured party's option.

Several post-*Yvanova* decisions have rejected the theory that an assignment of a deed of trust that was robosigned[3] and/or forged was void, concluding that such irregularities rendered the assignments merely voidable at the option of the injured banks. (See *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 46 (*Kalnoki*); *Mendoza, supra*, 6 Cal.App.5th at pp. 819; *Saterbak, supra*, 245 Cal.App.4th at pp. 814–815.) As plaintiffs point out, these cases did not meaningfully distinguish between the practices of robosigning and forgery. While plaintiffs concede that a robosignature renders an assignment merely voidable, they maintain that a forged assignment is void ab initio, citing *Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36 (*Wutzke*) and similar case authorities. They further cite *Century Bank v. St. Paul Fire & Marine Insurance Co.*

---

[2] *Saterbak* also rejected an argument raised by plaintiffs here that a portion of paragraph 22 of the deed of trust requiring lenders to notify borrowers of their "right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale" gives plaintiffs standing to bring a presale action in court. As *Saterbak* held, such "provisions do not change [the plaintiff's] standing obligations under California law." (*Saterbak, supra*, 245 Cal.App.4th at p. 816.)

[3] "The use of automated signatures" has been "colloquially referred to as 'robosigning.' " (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2018) ¶ 6:536:16.)

(1971) 4 Cal.3d 319 (*Century Bank*) for the proposition that someone who executes a document without lawful authority commits forgery.

As a threshold matter, we disregard the complaint's repeated uses of the terms "forged" and "void ab initio," as these are legal conclusions insufficient to withstand demurrer. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.) While we assume the truth of the complaint's factual allegations that Stone, Mathews, Chmeilewski, Valadez, and Davis (hereafter the signatories) falsely asserted various job titles in executing foreclosure-related documents, as we shall explain, these allegations are insufficient to support the conclusion that the documents were void.

A forgery is a " ' "writing which falsely purports to be the writing of another," ' and is executed with the intent to defraud." (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 382.) The Penal Code defines forgery as requiring a signer's knowledge that he or she lacks authority to sign the name of another person, as well as intent to defraud. (Pen. Code, § 470.) In *Wutzke*, *supra*, 151 Cal.App.3d 36, a deed of reconveyance was found to be void because it met this legal definition of forgery. One of the borrowers under a promissory note and deed of trust (Miller), executed and recorded a fraudulent deed of reconveyance, signing "the fictitious names of Howard Perry, as executive officer of [the trustee on the deed of trust], and Caroline Wilson, notary." (*Wutzke*, at p. 39.) *Wutzke* held that Miller's signing of a fictitious name on the deed of reconveyance rendered the document void because it was a forgery within the meaning of Penal Code section 470. (*Id.* at pp. 40–42.)

In so concluding, *Wutzke* distinguished *People v. Bendit* (1896) 111 Cal. 274, which held that a defendant who signed a bill of exchange in his own

9

name while falsely representing himself to be a collector for a business firm did not commit forgery because "it is no *false making* of the instrument, but merely a false assumption of authority." ' " (*Id.* at pp. 277–278.) In contrast, *Wutkze* highlighted that Miller "did not sign his own name but rather those of two fictitious persons, thereby executing a document 'which falsely purports to be the writing of another.' " (*Wutzke*, *supra*, 151 Cal.App.3d at p. 42.)

Plaintiffs' "forgery" allegations resemble *Bendit*, not *Wutzke*. They do not allege that the signatories signed the foreclosure documents using the names of other, or fictitious, persons. Nor do they allege that the signatures as they appear in the challenged instruments are not those of the signatories. Rather, as in *Bendit*, the allegations involve individuals signing their own names but making false assertions of authority. Although plaintiffs allege in a conclusory fashion that the signatories acted "fraudulently" and with the "intent to defraud," they fail to allege such fraud with particularity. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 [particularity requirement for pleading fraud].) Critically, nowhere in the complaint do plaintiffs allege that the signatories acted without the permission of the entities on whose behalf they signed. Indeed, as to Mathews and Chmeilewski, plaintiffs allege that these individuals executed the foreclosure documents "at the direction of" the loan servicers, Nationstar and SLS.

Moreover, even if we indulged plaintiffs' theory that the signatories committed forgery, plaintiffs still fail to allege a void assignment because a principal may ratify the forgery of its signature by an agent. (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73–74 (*Rakestraw*); see *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 703–704 [principal may ratify agent's unauthorized act].) "[T]he ratification of an act of forgery by one held out to be a principal creates an agency relationship between such person and the purported agent

and relieves the agent of civil liability to the principal which otherwise would result from the fact that he acted independently and without authority. (*Rakestraw*, at p. 74.) Thus, in *Rakestraw*, the forgery of a cross-complainant's name on a promissory note and deed of trust by her ex-husband was ratified by the cross-complainant who, despite knowledge of the fraud, did nothing for several years until an action was brought against her to enforce the payment obligation. (*Id.* at pp. 71–72, 75.)

Accordingly, even if the signatories' false assertions of job titles constituted forgeries, these acts were capable of ratification by the entities on whose behalf they falsely signed. Plaintiffs do not allege that any of the parties to the allegedly forged instruments have stepped in to void them. Thus, the complaint alleges, at best, irregularities that are voidable at the option of the injured parties, and under *Yvanova*, plaintiffs lack standing to assert those parties' rights in order to challenge the foreclosing entity's authority to maintain the foreclosure proceedings. (*Yvanova*, *supra*, 62 Cal.4th at p. 936.)

*Century Bank*, *supra*, 4 Cal.3d 319 does not compel a different conclusion, as that case involved the interpretation of a banker's blanket bond that insured against losses from loans made in reliance on " 'counterfeited [or] forged' " instruments. (*Id.* at p. 320.) As an initial matter, we question whether *Century Bank* has application outside the context of interpreting an insurance policy. In concluding that the bond's forgery coverage applied where a security instrument was signed "by one who had no authority to do so" (*ibid.*), *Century Bank* applied the maxim that the meaning of an insurance policy must "be ascertained according to the insured's reasonable expectation of coverage, and all doubts as to the meaning are to be resolved against the insurer." (*Id.* at p. 321.) The court

11

thus construed the contract "in accord with the reasonable understanding of a layman as to what constitutes forgery or counterfeiting, rather than in accord with technical definitions and refinements of criminal statutes." (*Id.* at pp. 321–322.) But in any event, *Century Bank* went on to hold that "the precise conduct which caused plaintiff's loss in the present case falls within the literal definition of forgery set forth in Penal Code section 470," a circumstance that distinguishes *Century Bank* from our case. (*Century Bank, supra*, 4 Cal.3d at p. 322.)

In sum, because plaintiffs have not alleged a void assignment of the deed of trust, but merely voidable irregularities in the foreclosure process, they lack standing to challenge the foreclosing entity's power to sell on these grounds. (*Kalnoki, supra*, 8 Cal.App.5th at p. 46; *Mendoza, supra*, 6 Cal.App.5th at p. 819; *Saterbak, supra*, 245 Cal.App.4th at pp. 814–815.) Thus, the trial court properly sustained the demurrer to the wrongful foreclosure claim.

### 2. *Remaining Causes of Action*

The remaining causes of action fare no better, as they each duplicate the wrongful foreclosure claim's central allegation that the foreclosure instruments were forged. The first cause of action seeks a declaratory judgment that the assignments of the deed of trust, substitutions of trustees, and notices of default and sale are void due to the alleged "fraud, lack of authority, intent to defraud, and forgery." The fourth cause of action seeks cancellation of these instruments on the same grounds. The second cause of action alleges violations of California nonjudicial foreclosure statutes "due to the forgery" of Stone and Mathews. Likewise, the UCL claim "borrows" from California nonjudicial foreclosure statutes as well as the Penal Code (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20

12

Cal.4th 163, 180) to allege that defendants committed forgery, and the slander of title claim alleges that the recording of "forged" documents slandered plaintiffs' title to their home. To the extent these claims seek preemptively to challenge the foreclosing party's authority to proceed with the foreclosure sale, they fail as a matter of law for the reasons discussed. (See *Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 607 [declaratory relief claim based on defective causes of action also fails as matter of law]; *Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050, 1060 [defendant cannot be liable for unlawful business practices without having violated borrowed law].)

The slander of title claim fails for the additional reason that plaintiffs fail to allege sufficient facts to overcome the common interest privilege of Civil Code section 47, subdivision (c). Slander of title occurs when a person publishes a false and unprivileged statement that disparages title to property and causes the owner special pecuniary loss or damage. (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.) Importantly, the law "deems statutory nonjudicial foreclosure procedures to be privileged communications under [Civil Code] section 47," which "provides a qualified privilege for communications made 'without malice, to a person interested therein, . . . by one who is also interested' [citation], the so-called common interest privilege. For this purpose, malice is defined as actual malice, meaning ' "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' " (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 336, italics omitted.) Here, the complaint contains only conclusory statements that the foreclosure

13

instruments were not privileged and were recorded with malice. Plaintiffs provide no argument or support that the demurring defendants' malice can be inferred from the allegations that the signatories held out false job titles in the instruments they signed.

Instead, plaintiffs contend that the common interest privilege applies only to the actions of the foreclosure trustee, not the demurring defendants. We are not persuaded. Civil Code section 2924, subdivision (d), states in relevant part that "privileged communications" pursuant to Civil Code section 47 include the "[p]erformance of the procedures set forth in this article." The slander of title claim is based on the demurring defendants' acts of recording or causing to be recorded the notices of default, the assignments of the deed of trust, and the substitutions of trustees, all of which constitute procedures set forth in the same article as Civil Code section 2924—which spans Civil Code sections 2920 to 2944.10. (See Civ. Code, §§ 2933.55 [recordation of notice of default], 2934 [recording of assignment of deed of trust], 2934a [substitution of trustee].) Thus, the privilege applies to the demurring defendants' alleged conduct, and plaintiffs' failure sufficiently to allege malice provides an additional ground for sustaining the demurrer to the slander of title claim.

For all of these reasons, we conclude the trial court properly sustained the demurrers to the complaint in its entirety.

### 3. *Leave to Amend*

We last consider whether the trial court abused its discretion in denying leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) To demonstrate that discretion was abused, plaintiffs have the burden of showing a reasonable possibility that the pleading defects could be cured by amendment. (*Ibid.*) Plaintiffs have not met their burden here.

14

Plaintiffs contend they were wrongfully denied leave to allege that SLS admitted in discovery that Mathews was not its employee.[4] This proposed allegation would not cure the deficiency discussed above. Mathews' lack of employment with SLS does not mean she could not act as its agent (see *Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 205), or that an agency relationship could not be created by the principal's ratification of Mathews' alleged forgery. (*Rakestraw, supra,* 8 Cal.3d at p. 73.) Plaintiffs do not propose to allege that the signatories acted without the permission of the entities on whose behalf they signed.

Plaintiffs further contend they could have alleged that the property had a main house in which they resided, while a "granny unit" was rented to a tenant, and that this fact would have cured any deficiencies in the complaint by bringing them within the protection of the Homeowner's Bill of Rights (citing Civ. Code, § 2924.15). Since the complaint already alleged plaintiffs resided on the property, this proposed amendment would have changed nothing.

Finally, plaintiffs proffer the allegation that the property was sold at a completed foreclosure sale in October 2018. While this allegation would transform this matter from a preforeclosure action to a postforeclosure one, it would not change our decision. We have already assumed for the sake of argument that *Yvanova*'s recognition of borrower standing applies to plaintiffs' presale action, but it remains the case that plaintiffs' forgery

---

[4] Although an assignment of the deed of trust from BofA to U.S. Bank purports to be signed by Robin Mathews, "Vice President" of SLS, SLS apparently conceded in responding to discovery that "Robin Mathews was never employed by Responding Party," while maintaining "documents evidencing the authority of Robin Mathews to execute any foreclosure-related documents may be in the possession of other parties, including Nationstar Mortgage LLC and Bank of America, N.A."

allegations establish only a voidable, rather than void, irregularity. (*Rakestraw, supra*, 8 Cal.3d at pp. 73–74; *Kalnoki, supra*, 8 Cal.App.5th at p. 46; *Mendoza, supra*, 6 Cal.App.5th at p. 819; *Saterbak, supra*, 245 Cal.App.4th at pp. 814–815.)

For all of these reasons, we conclude the trial court did not abuse its discretion in denying leave to amend.

**B. Attorney Fees**

Generally, each party to a lawsuit must pay its own attorney fees unless a contract, statute, or other law authorizes a fee award. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10); *Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) The determination of the legal basis for an award of attorney fees is a question of law which we review de novo. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

SLS relies on section 6(E) of the promissory note, and sections 9, 14, and 22 of the deed of trust as the contractual bases for its request for attorney fees. Both the note and deed of trust are contracts. (See *Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225, 230; *Henehan v. Hart* (1900) 127 Cal. 656, 657–658.) The purported fee provisions are as follows.

Under section 6(E) of the promissory note, if the borrower is in default under the terms of the note, "the Note Holder will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

Section 9 of the deed of trust states in relevant part that if the borrower defaults and "there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . ., then Lender may do and pay for whatever is reasonable or

16

appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . paying reasonable attorneys' fees . . . . [¶] Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

Under section 14 of the deed of trust, the "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees."

Finally, section 22 of the deed of trust states in relevant part that after notice of default to the borrower, if the default is not timely cured, the lender may require immediate payment in full of all sums secured by the security instrument and may invoke the power of sale, and the lender "shall be entitled to collect all expenses incurred in pursing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

Plaintiffs set forth several arguments as to why the award of attorney fees under these clauses was erroneous. Their main contention is that SLS was a nonsignatory to the note and deed of trust and did not " 'stand[] in the shoes' " of a party to those contracts. (*Cargill*, *Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966.) Plaintiffs alternatively contend that the provisions in question are not attorney fee clauses permitting an award in litigation to SLS.

This latter argument is supported by *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322 (*Hart*) and *Chacker v. JPMorgan Chase Bank, N.A.*

17

(2018) 27 Cal.App.5th 351, both of which held that a clause identical to section 9 of the deed of trust here did not provide for attorney fees in litigation. The language of that clause—which makes attorney fees incurred by the lender " 'additional debt of Borrower secured by this Security Instrument' " and payable, with " 'interest at the Note rate . . . upon notice from Lender to Borrower' "—merely added attorney fees to the secured debt but did not justify a separate award, both courts concluded. (*Chacker*, at p. 357; *Hart*, at pp. 325, 327.) *Chacker* additionally held that a clause identical to section 14 of the deed of trust here did not permit a "freestanding contractual attorney fees award" for the same reasons. (*Chacker*, at p. 357.) As *Chacker* reasoned, section 14, "entitles the lender to charge the borrower fees, and the usage of the word 'charge,' particularly in combination with the 'Loan Charges' heading and the other clauses in section 14, is naturally read to permit the lender to add any attorney fees it may have incurred to the outstanding amount due under the promissory note. There is no language in section 14 that indicates the trust deed permits a freestanding contractual attorney fees award." (*Ibid.*)

SLS challenges the procedural manner in which plaintiffs have cited *Hart* and *Chacker*, moving to strike plaintiff's "Letter of Authority" citing *Hart* as noncompliant with California Rules of Court, rule 8.254, and arguing that plaintiffs' citation to *Chacker* was belatedly made for the first time in their reply brief. SLS further contends that plaintiffs forfeited their arguments based on these cases by failing to present them below. Although SLS is correct that plaintiffs should have made this argument sooner, we observe that SLS has not been deprived of the opportunity to provide responsive briefing. SLS included in its motion to strike a substantive analysis of *Hart* and arguments as to why it is purportedly distinguishable,

18

and after the conclusion of briefing, we requested and received supplemental briefing from SLS on *Chacker*. Under these circumstances, and because our independent research would have uncovered *Hart* and *Chacker* in any event (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251 [court is not constrained to authorities cited by parties in their briefs]), we deny SLS's motion to strike plaintiffs' letter of authority and exercise our discretion to consider *Chacker* for the first time on appeal.

As for plaintiffs' forfeiture, it is well settled that when an issue raises a pure question of law, we may consider it for the first time on appeal. (*Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 219.) Our interpretation of the note and deed of trust is a question of law (*State Farm Fire & Casualty Co. v. Lewis* (1987) 191 Cal.App.3d 960, 963 [contractual interpretation is a question of law]), as is the applicability of the holdings of *Hart* and *Chacker* to the instant case. Accordingly, we exercise our discretion to consider these legal issues for the first time on appeal.

Although neither *Hart* nor *Chacker* addressed provisions identical to section 6(E) of the promissory note or section 22 of the deed of trust at issue here, we conclude these provisions are, like sections 9 and 14 of the deed of trust, best construed as referring to amounts that a note holder would charge against borrowers, not that a court would separately order as an award of attorney fees. Notably, section 6(E) of the promissory note refers to the note holder's right to be "paid back" its costs and expenses (including attorney fees), a term that reasonably relates to the borrower's loan obligation. The language of Section 22 is less pointed, entitling the lender "to collect" attorney fees, but this must be read in conjunction with the other provisions of the deed of trust, including section 9's explicit mandate that the lender's attorney fees "shall become additional debt." Reasonably construed, all of the

clauses in question provide the same remedy to the enforcing lender or note holder, as the incurred attorney fees are part of the same effort to enforce the note and invoke the power of sale under the trust deed. It is of no consequence that the note and trust deed are separate contracts, as "[s]everal related contracts may be interpreted together, if between the same parties and part of substantially the same transaction." (*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101, 111, citing Civ. Code, § 1642.)

*Santa Clara Savings & Loan Assn. v. Pereira* (1985) 164 Cal.App.3d 1089 (*Pereira*) does not persuade us otherwise. While *Pereira* held that a lender was entitled to attorney fees under a clause materially similar to section 9 of the deed of trust here (*id.* at pp. 1097–1098), we echo *Hart*'s observation that *Pereira* was simply not called upon to decide whether those fees could be separately awarded instead of being added to the borrower's indebtedness. (See *Hart, supra*, 27 Cal.App.5th at p. 328 [*Pereira* did not "actually analyze[] whether paragraph 9 specifically provided for an award of attorney's fees"].)[5] Cases do not stand for propositions not actually considered by the court. (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679.)

For these reasons, we conclude section 6(E) of the promissory note and sections 9, 14, and 22 of the deed of trust allow attorney fees incurred in enforcing the note and deed of trust to be added to the loan amount but do

---

[5] Instead, *Pereira* addressed (and rejected) arguments that the lender was not entitled to attorney fees under this provision because (1) the borrowers did not breach the deed of trust, and (2) the lender's attempt to enforce an acceleration clause was not an action necessary to protect the lender's security interest. (*Pereira, supra*, 164 Cal.App.3d at pp. 1097–1098.)

20

not authorize a separate fee award to SLS, the loan servicer.  Accordingly, we reverse the order awarding contractual attorney fees to SLS.[6]

## DISPOSITION

The postjudgment order awarding SLS its attorney fees is reversed.  In all other respects, the judgment is affirmed.  In the interests of justice, all parties are to bear their own costs on appeal.



TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Rezapour et al. v. U.S. Bank National Association et al.* (A156855)

---

[6]  In light of this conclusion, we need not address plaintiffs' additional arguments challenging the attorney fee award.

21